Danny **EISENBERG**, Plaintiff,

v.

**PRINCIPAL LIFE INSURANCE COMPANY, an Iowa corporation, Defendant.**

**No. CVS01–0221–LRH–LRL.**

United States District Court,
D. Nevada.

July 8, 2003.

Alan Cates, Steven J. Parsons, Law Office, Las Vegas, NV, for Plaintiff.

Daniel Foley, Foley & Foley, Las Vegas, NV, Richard Ergo, Bowles & Verna, Walnut Creek, CA, for Defendant.

## ORDER

HICKS, District Judge.

Before the Court is Principal Life Insurance Company's Motion for Summary Judgment (# 22), filed December 3, 2002. On January 13, 2003, the Plaintiff, Danny Eisenberg filed an opposition. The Defendant filed a reply on February 10, 2003. Upon review of the evidence presented, the memoranda of the parties, and the prior orders of the court, the court makes the following disposition.

## I. Facts and Procedural Background:

This case arises from Danny Eisenberg's ("Eisenberg") claims for denial of benefits under an "employee welfare benefit plan"[1] as defined under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Eisenberg was employed by Radiology Associates of Nevada, a company that offered Eisenberg medical insurance coverage from Principal Life Insurance Company ("Principal"). Because Eisenberg's daughter, Ravit, suffered from an eating disorder, Eisenberg set out to find what he considered a satisfactory program and facility for the continued treatment of his daughter. In Eisenberg's estimation, New Haven, a residential treatment center in Utah was ideal. Ravit was ultimately admitted to New Haven for medical and psychiatric treatment, and Eisenberg submitted a claim to Principal to cover part of the costs incurred in Ravit's treatment. Principal denied the claim on the grounds that under the Plan, it would only pay for treatment in a hospital. The Plan defined "hospital" as an institution "licensed as a hospital by the proper authority of the state in which it is located ...." (MSJ, Ex. 7, PRIN0372). Because the State of Utah licensed New Haven as a "Residential Treatment Center," Principal determined that the Plan did not cover Ravit's treatment at New Haven.

Eisenberg filed a complaint on February 26, 2001, seeking declaratory relief pursuant to 29 U.S.C. § 1132(a)(1)(B), breach of employee benefit plan, and breach of statutory duties pursuant to Nev.Rev.Stat. 686(a). The Court dismissed Eisenberg's third cause of action on March 29, 2002. Principal then filed the present motion for summary judgment.

## II. Standard of Review

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538

---

1. The Court will reference both the plan itself and Eisenberg's policy as the "Plan" for ease of reference as the relevant terms under the Plan are the same as those under the group policy.

(1986); *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir.2001).

The initial burden rests on the moving party to point out the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is " 'sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.' " *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986). *See Idema v. Dreamworks, Inc.,* 162 F.Supp.2d 1129, 1141 (C.D.Cal.2001). For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Catrett,* 477 U.S. at 325.

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 249, 106 S.Ct. 2505. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252, 106 S.Ct. 2505.

## III. Erisa Standard of Review

■ Depending on the language of the ERISA plan, a "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). This means that generally the "administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision." *See Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1089 (9th Cir.1999)(en banc). If the plan does give the administrator or fiduciary discretionary authority to determine eligibility for benefits, the Court reviews its determinations for abuse of discretion.[2]

■ In this case, the Court is convinced that the relevant Plan language vests discretion in Principal in a sufficient manner to initially suggest that an abuse of discretion standard is the appropriate standard of review. Specifically, the Plan provides benefits for medically necessary inpatient mental or nervous disorder care or treatment. Benefits are payable if under the Plan, care is deemed to be "Medically Necessary Care." The Plan defines "Medically Necessary Care" in part as "any confinement, treatment, or service that is prescribed by a physician and *considered by Us* to be: necessary and appropriate . . . ." (MSJ, Ex. 7, PRIN0373) (emphasis added). Even under the heightened standard of *Sandy v. Reliance Standard Life Ins. Co.,* 222 F.3d 1202, 1207 (9th Cir.2000), requiring plan documents to "unambiguously say in sum or substance" that the administrator has discretion, the Court finds that the

---

**2.** Based on the parties' respective briefing, the Court will assume that Principal is a proper defendant in this action. *See Everhart v.* *Allmerica Financial Life Insurance Company,* 275 F.3d 751, 756 (9th Cir.2001).

subject Plan language vesting discretion in Principal is sufficient. Leaving the determination as to what is medically necessary to "Us" or Principal is a fairly unambiguous grant of discretion. Within the relevant language, "the standard for providing care is defined, as well as the arbiter of that standard ...." *Neurocare, Inc. v. Principal Life Ins. Co.*, 1999 WL 33221123, *4 (N.D.Cal., Sept.29, 1999) (analyzing the same language and finding it confers sufficient discretion to maintain abuse of discretion standard). Thus, preliminarily, Principal's decision should be reviewed for an abuse of discretion.

■ Eisenberg also argues that Principal's position as an insurer that pays claims out of its own assets creates a conflict of interest, and that Principal's self-interest caused a breach of its fiduciary obligations. The district court should review a denial of benefits *de novo* if in fact the conflict of interest caused a breach of fiduciary duties. *See McDaniel v. The Chevron Corporation*, 203 F.3d 1099, 1108 (9th Cir.2000). The test for a conflict of interest under the circumstances is two-tiered. First, a plan participant must come forward with "material probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations." *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1322–23 (9th Cir.1995). If the plan participant satisfies this standard, the burden shifts to the fiduciary to "produce evidence that the apparent conflict of interest did not affect the decision to deny benefits." *McDaniel*, 203 F.3d at 1108. If the plan participant fulfills his or her burden of proof, but the fiduciary fails to do the same, review of the decision is *de novo*. Conversely, if the participant fails to satis-

fy the standard, the burden never shifts, and review is for an abuse of discretion.

■ In support of his contention that Principal's conflict of interest affected its decision to deny benefits, Eisenberg states that he, through his counsel, advised Principal that its decision was violative of Nevada law.[3] Eisenberg's after-the-fact legal conclusion, however, is not the type of "material probative evidence" the Ninth Circuit had in mind in *Atwood*. Rather, "material probative evidence" may consist of "inconsistencies in the plan administrator's reasons ... insufficiency of those reasons ... or procedural irregularities in the processing of the beneficiaries claims ...." *Nord v. Black & Decker Disability Plan*, 296 F.3d 823, 829 (9th Cir.2002) (internal citations omitted). None of Eisenberg's assertions fall into the foregoing categories of "material probative evidence." This being the case, he has failed to meet his burden and the Court will review Principal's decision using an abuse of discretion standard.

## IV. Discussion

■ The Ninth Circuit has held that it is an abuse of discretion for a fiduciary "to make a decision without any explanation, or in a way that conflicts with the plain language of the plan, or that is based on clearly erroneous findings of fact." *Atwood*, 45 F.3d at 1323–24. In making the determination, no evidence outside the administrative record is to be considered when an abuse of discretion standard is employed. *See Taft v. Equitable Life Assurance Soc'y.*, 9 F.3d 1469, 1472 (9th Cir. 1993).

Principal acknowledges that the Plan does provide some benefits for in-patient treatment of a mental or nervous disorder

---

**3.** Eisenberg also asserts that Principal's failure to provide the entire administrative record with its summary judgment motion constitutes evidence of its conflicted interests. The Court disagrees.

such as bulimia. The Plan specifically states that,

> [i]f you or one of your Dependents is confined in a *Hospital* for 15 or more consecutive hours due to a mental or nervous disorder ... benefits will be payable for charges by the Hospital for room, board, and other usual services and for Physician Visits provided during such confinement for not more than 30 days of confinement each calendar year for each insured person.

(MSJ, Ex. 7, PRIN0402) (emphasis added).

Principal maintains that this contract language clearly requires that for benefits to be payable, the insured must received treatment in a hospital. The Plan defines "hospital" as an institution that is "licensed as a hospital by the proper authority of the state in which it is located ...." (MSJ, Ex. 7, PRIN0372). As Principal points out, New Haven is characterized as a "Residential Treatment Center" on the face of its license from the Utah Department of Human Services. This fact is not in dispute. Nor does Eisenberg present any evidence or argument to suggest that residential treatment centers are synonymous with hospitals under Utah law.

■ Instead, Eisenberg attacks Principal's determination on two separate grounds. First, while Eisenberg concedes that the issue in the case as it concerns Principal's claim denial is whether New Haven was a "hospital" as defined by the Plan, he contends Nevada law requires Principal to include New Haven in the Plan. Eisenberg invites the Court's attention to Nev.Rev.Stat. 689(B).030, which sets forth numerous provisions which are required to be included in all health insurance policies issued in Nevada. This section states that the Plan must contain "[a] provision for benefits for expense arising

from care at home or health supporting services if the care or service ... would have been covered by the policy if performed in a medical facility ... as defined in Chapter 449 of Nev.Rev.Stat." Nev.Rev. Stat. 689(B).030. Eisenberg then turns to section 449.0151 for the definition of "medical facility." Included in the definition are "psychiatric hospital[s]." Nev.Rev. Stat. 449.0151. Finally, Nev.Rev.Stat. 449.0165 defines a psychiatric hospital as "[a] hospital for the diagnosis, care, and treatment of mental illness which provides 24 hour residential care ...." Based on the combination of these statutes, Eisenberg argues that because New Haven is a medical facility under Nevada law, somehow Principal is required to include institutions like New Haven in the Plan's definition of "hospital." Eisenberg's inventive argument, however, fails for one important reason: the clear language of Nev. Rev. Stat 689(B).030 does not require coverage in any medical facility. It requires only that the Plan provide benefits for expenses arising from care at home or health supporting services if the care would have been covered under the Plan to begin with.[4]

■ Eisenberg's second argument is equally unavailing. According to Eisenberg, the Court should look beyond the technical definitions of the Plan to the reasonable expectations of the insured. The "reasonable expectations" doctrine applies as a matter of federal common law governing ERISA contracts when a provision in an insurance policy is either ambiguous or not sufficiently conspicuous. *Hanson v. Prudential Ins. Co. of America,* 783 F.2d 762 (9th Cir.1985); *Saltarelli v. Bob Baker Group Medical Trust,* 35 F.3d 382 (9th Cir.1994).

---

4. The Plan does appear to provide "Home Health Care" benefits in compliance with Nev.Rev.Stat. 689(B).030. (MSJ, Ex. 6, PRI-NO510–511).

Eisenberg first cites *Hanson* in support of his reasonable expectations argument. In *Hanson,* a group medical policy defined "hospital" as an institution with 24–hour a day nursing service but did not further define the term "nursing service." After analyzing the language of the policy, the court held that the residential treatment facility at issue was not disqualified from being considered a "hospital" in light of the fact that the policy definition was ambiguous. *See Hanson,* 783 F.2d at 766. Unlike the policy terms in *Hanson,* there is nothing in the Plan or in Eisenberg's opposition to suggest that any of the relevant provisions of the Plan are ambiguous. The Plan plainly states that Eisenberg and his dependents are covered for in-patient mental health coverage in an institution that meets the Plan's definition of hospital. The Plan unambiguously defines hospital as an institution that is licensed as such. The Court finds nothing ambiguous about the foregoing provisions.

Eisenberg also cites *Saltarelli,* presumably for the proposition that the Plan provisions were not sufficiently conspicuous. In *Saltarelli,* the court refused to enforce a pre-existing condition exclusion because it was buried within a conjunctive reading of several definitions of the plan, and thus, was not conspicuous enough to attract the attention of a reasonable layman. *Saltarelli,* 35 F.3d at 387. In contrast, the Plan provisions at issue here are easily accessible and conspicuous. The Plan specifically states that benefits will be provided in certain circumstances if a hospital renders the services. This language is not hidden in the Plan as was the case in *Saltarelli.* Moreover, to gain a working understanding of what types of facilities were considered by Principal to constitute a hospital, Eisenberg needed only to reference one

definition. Accordingly, the Court finds that the language of the Plan was conspicuous and easily understandable even to a layman.[5]

■ Ultimately, the question presented in this case is whether Principal abused its discretion in denying Eisenberg's claim for benefits "without any explanation, or in a way that conflicts with the plain language of the plan, or that is based on clearly erroneous findings of fact." *Atwood,* 45 F.3d at 1323–24. First, there is no suggestion that Principal denied Eisenberg's claim without any explanation. Indeed, Eisenberg alludes to the fact that Principal failed to provide the Court the initial denial letter as part of the record. Second, as demonstrated above, the Court is convinced that Principal's determination did not conflict with the language of the Plan. The Plan covered the type of treatment Ravit required if Eisenberg chose to send her to the type of institution that was included in the Plan's definition of "hospital." New Haven was not this type of institution. Finally, the record is devoid of any evidence tending to show that Principal made any erroneous findings of fact. Without evidence that Principal abused its discretion, there are no genuine issues of material fact and summary judgment is appropriate. The Court notes that it would have come to the same conclusion upon *de novo* review.

IT IS THEREFORE ORDERED that Principal's Motion for Summary Judgment (# 22) is GRANTED.

---

5. Although not central to the Court's determination, Eisenberg appears to be a member of the medical profession. If this is the case, he is not merely a layman but someone who should be sophisticated in the realm of medical insurance coverage.