[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 30, 2003
THOMAS  K. KAHN
CLERK**

_____

No. 02-16985

_____

D. C. Docket No. 01-00485 CV-J-20-TEM

LOIS ANN TORRES,

                                            Plaintiff-Appellant,

                        versus

PITTSTON COMPANY, as Plan Administrator
of the Employee Benefit Plan of the Pittson Company,

                                            Defendant-Appellee,


LIFE INSURANCE COMPANY OF NORTH AMERICA,

                                            Intervenor-Defendant-
                                            Appellee.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

**(September 30, 2003)**

Before ANDERSON and BIRCH, Circuit Judges, and PROPST[*], District Judge.

_____

[*]Honorable Robert P. Propst, United States District Judge for the Northern District of
Alabama, sitting by designation.

PER CURIAM:

The only issue that we will definitively resolve in this appeal is the appropriate standard for a district court's review where an ERISA fiduciary, which is operating under a conflict of interest, denies disability benefits based on its determination of the factual circumstances of the beneficiary's claim  The district court applied the deferential arbitrary-and-capricious standard of review, apparently adopting the argument of the Insurers[1] that the "insurer conflict rule" and its "heightened arbitrary capricious" standard of review should apply only to a fiduciary's decisions regarding plan interpretation, not to its factual determinations, even though the fiduciary is under a conflict of interest.  We disagree, and accordingly reverse and remand for reconsideration under the appropriate standard of review.

## I.  BACKGROUND

Perry Torres, the deceased husband of Appellant Lois Torres,[2] was employed as a salesman with Brinks Home Security ("Brinks"), a subsidiary of Pittston.

---

[1]    For brevity, we refer to the Defendants/Appellees collectively as "the Insurers," using their individual company names only as necessary in the historical narrative.

[2]    Perry Torres died of causes unrelated to the injuries at issue here while this action was pending before the district court, and his estate was substituted as plaintiff.  All references hereinafter to "Torres" refer to Perry Torres.

Through his employer, Torres was covered by three insurance policies which provided benefits in the event of disabling injury: (1) a Personal Accident Plan, of which Pittston was the designated Plan Administrator, which was underwritten by Life Insurance Company of North America ("LINA"), an affiliate of CIGNA Corporation[3]; (2) a Long Term Disability Plan, underwritten and administered by Aetna Insurance Co. (hereinafter, "the Aetna plan"); and (3) a Business Travel Accident Plan, of which LINA also served as underwriter and claims administrator.[4]

In pertinent part, the Personal Accident Plan provides that an insured employee will receive permanent total disability benefits (in Torres' case, a lump sum of $500,000) under the following conditions:

> [I]njury from a covered accident causes you to become totally and continually disabled ... within 180 days of the accident, the disability continues for one year, and proper medical authority certifies you to be permanently totally disabled (unable to engage in any occupation for which you are suited by education, training or experience)(.)

---

[3]     The record and pleadings occasionally use "LINA" and "CIGNA" interchangeably. We refer only to "LINA" for consistency.

[4]     Although Torres made claims for benefits under all three plans, benefits under only the first plan are at issue in this appeal, and thus all succeeding references to "the plan" or "the insurance policy" refer to the Personal Accident Plan, unless otherwise specified.

The summary plan description provided to Torres does not define what constitutes a "proper medical authority." Regarding the procedure for the review of claims, the summary plan description states:

> If a claim for benefits is denied in whole or in part, you or your beneficiary will be notified in writing within 90 days after your claim has been received. The notice will give you the reasons for denial and a description of any additional information necessary to establish the claim. You, your beneficiary or your authorized representative, within 60 days after such notification, may request the Administrative Committee to reconsider your claim ... Your or your beneficiary will be advised of the decision on review within 60 days after such request.

On December 2, 1998, Torres was involved in a motor vehicle accident outside of Lake City, Florida. The circumstances of the accident are the subject of some dispute. Torres contends that he and his wife (who was also employed by Brinks) were in the car, returning from a work-related training session in Jacksonville, while the Insurers assert that Torres was alone in the car and was not engaged in business-related travel. After the accident, Torres received treatment for back and shoulder pain, among other symptoms. He ultimately underwent lumbar fusion surgery, during which a prosthetic device was inserted to stabilize his back. Without detailing Torres' lengthy medical history here, the record indicates that Torres continually complained after the surgery of severe pain, weakness and numbness in his arms, which one of his treating physicians, Dr.

Lipoff, attributed to a brachial plexus injury that may have occurred during the back surgery. Doctors tried various treatments, including stellate ganglion blocks (the injection of a local anesthetic near the afflicted area) and various prescription narcotic painkillers, with no lasting relief. In March of 2000, Dr. Lipoff opined that Torres had been permanently and totally disabled since April 1999, and that his condition could only be expected to deteriorate. Based on the aforementioned medical conditions, among others, Torres applied for and was awarded Social Security disability insurance benefits.

Torres filed a claim for benefits under all three Pittston policies. LINA received Torres' application for benefits under the Personal Accident Plan on March 10, 2000. On November 22, 2000 – more than eight months later – Torres' attorney wrote to LINA stating that, because the insurer had neither paid nor denied the claim within 90 days, Torres regarded the claim as having been deemed denied. Accordingly, he requested reconsideration of the deemed denial by the Plan's Administrative Committee. Pittston and LINA did not respond to the letter until January of 2001, at which time they each advised Torres that his claim was still under review and that, accordingly, reconsideration by the Administrative Committee would be premature.

Torres filed this action on February 22, 2001, in Florida state court, and Pittston removed it to the U.S. District Court for the Middle District of Florida. On March 15, 2001 – after the Complaint was filed, but before the Insurers received notice of it by service or otherwise – LINA issued its denial of Torres' claim. The denial letter began with a recitation of LINA's findings regarding the claim. These included: (1) the circumstances of the automobile accident, according to LINA's review of the police accident report, did not comport with Torres' account that he was severely injured while traveling home with his wife from Brinks' Jacksonville office, but rather indicated that Torres was alone, was traveling in a different direction, and was not severely injured; (2) an intake questionnaire from the Florida Neck & Back Institute, where Torres was seen after the accident, does not indicate that the injury was work-related; (3) Torres continued working for Brinks until January 4, 1999, a month after the accident; (4) Torres was working as a timber broker well into the second quarter of 1999, and in fact was briefly incarcerated in March 1999 on a contempt charge arising out of a timber brokerage deal; (5) a Functional Capacity Evaluation by Shands Hospital indicated that Torres was capable of working at the sedentary level, and two Shands consulting physicians opined that Torres would benefit from returning to work at least part-time, and (6) a Transferrable Skills Analysis performed by a LINA consultant determined that,

based on his education and training, Torres could work in several occupations

(commission agent-agricultural products, surveillance system monitor, dispatcher)

in spite of his physical limitations. The letter concluded that:

> [I]t does not appear that his disability began within 180 days of the claimed accident, as he continued to work as a Timber Broker. Since it was determined that he could perform at a sedentary level and potential occupations were identified, he is not permanently totally disabled as defined in the policy.

The denial letter advised Torres of his right to seek administrative review within 60

days, and encouraged him – if he did so – to submit any additional medical

information supporting his claim.

Although this suit was in progress, Torres did request administrative review

by letter of May 10, 2001. In the letter, Torres' counsel maintained his position that

the denial actually occurred when the Insurers failed to make a timely decision on

the claim, and that administrative review had already been denied when the

Insurers failed to conduct such review after receiving Torres' November 22, 2000,

letter. Among the supporting documents included with the letter were two letters

from Aetna. The first, dated June 19, 1999, approved Torres' initial application for

24 months of long-term disability benefits on the grounds that he was "totally

disabled from [his] usual occupation." The second, dated February 21, 2001,

indicated that Torres had been approved for an extension of long-term disability

7

benefits beyond the 24-month cutoff because he was "unable to work at any reasonable occupation." Also included were affidavits from Torres and Mrs. Torres describing their account of the automobile accident. These supplemental materials were not made part of the administrative record complied by the Plan Administrator. Nothing in the record indicates that the Plan Administrator acted on Torres' request for review.

The Insurers twice moved for summary judgment. The first motion was based on their contention that Torres filed suit prematurely before allowing the Insurers' review process to run its course. The district court denied the motion, finding that the claim was deemed denied when the Insurers failed to act on it in a timely manner (within 90 days of receipt), thus excusing Torres' failure to exhaust his administrative remedies. The Insurers subsequently moved for summary judgment on the merits, arguing that their denial of the claim was not arbitrary or capricious. The district court – applying the pure arbitrary-and-capricious standard unmodified by the "insurer conflict rule," and limiting its review to the administrative record without allowing Torres to present supplemental evidence – granted the motion and entered summary judgment for the Insurers. Torres appeals.

## II. DISCUSSION

### A. Standard of Review for Factual Determinations

The seminal Eleventh Circuit case articulating what has later come to be known as "heightened arbitrary and capricious" standard of review is Brown v. Blue Cross and Blue Shield of Alabama, 898 F.2d 1556 (11th Cir. 1990). Plaintiff there was a participant in an ERISA health care plan under which Blue Cross provided the insurance coverage. Blue Cross denied certain hospitalization expenses incurred by plaintiff. Because Blue Cross both made the decision denying coverage, and would have had to pay out of its coffers if the coverage decision had been favorable to plaintiff, Blue Cross operated under a conflict of interest. Because the plan document conferred discretion upon Blue Cross in the matter of benefits determinations, its denial of benefits would have been entitled under Firestone Tire and Rubber Co. v. Bruch ("Bruch"), 489 U.S. 101, 109 S.Ct. 948 (1989), to the arbitrary-and-capricious, or abuse of discretion, standard[5] absent the conflict of interest. Brown saw its task as developing a "coherent method for integrating factors such as self interest into the legal standard for reviewing benefits determinations." Id. at 1561. After extensive analysis, the

---

[5] As Brown points out, 898 F.2d at 1558 n.1, Eleventh Circuit cases have equated the arbitrary and capricious standard and the abuse of discretion standard.

court noted that the "inherent conflict between the fiduciary role and the profit-making objective of an insurance company makes a highly deferential standard of review inappropriate." Id. at 1562. The court therefore held "that the abuse of discretion, or arbitrary and capricious, standard applies to cases such as this one, but the application of the standard is shaped by the circumstances of the inherent conflict of interest." Id. at 1563.

The Insurers argue that Brown is not controlling with respect to the proper standard of reviewing factual determinations by an ERISA fiduciary, because – in the Insurers' view – the underlying issue in Brown which the court had to review was an issue of plan interpretation, and not a factual issue. The Insurers rely by analogy upon the Fifth Circuit opinion in Pierre v. Conn. Gen. Life Ins. Co., 932 F.2d 1552 (5th Cir. 1991). There, the Fifth Circuit distinguished Bruch and held that factual determinations by an ERISA fiduciary should be reviewed pursuant to an abuse of discretion standard, even though the plan document did not expressly confer discretionary authority upon the fiduciary. The court recognized that the Supreme Court had required de novo review of an ERISA fiduciary's interpretations of plan provisions unless discretionary authority was expressly conferred. However, the Fifth Circuit thought factual determinations by the

10

fiduciary were sufficiently different from legal interpretations of the terms of the document to warrant a different result.

We reject the Insurers' invitation to distinguish between legal and factual determinations so that an ERISA fiduciary's factual determinations would be entitled to the arbitrary and capricious standard of review even though the fiduciary is under a conflict of interest. First and foremost, we believe that we are bound by precedent to apply the heightened arbitrary-and-capricious standard both to factual determinations and interpretations of the plan document by an ERISA fiduciary operating with discretionary authority but operating under a conflict of interest. Contrary to the Insurers' assertion, the underlying issues in Brown included not only issues of plan interpretation, but also factual determinations by the fiduciary.[6] We also applied the heightened arbitrary-and-capricious standard when reviewing the factual determinations of a conflicted ERISA fiduciary in Levinson v. Reliance Standard Life Ins. Co., 245 F.3d 1321 (11th Cir. 2001). There, the underlying determination by the fiduciary which the

_____

[6] Although it is clear that the fiduciary decisions which the court was called upon to review in Brown did include some issues of plan interpretation, we also believe that the court was required to review some factual decisions of the fiduciary. For example, whether or not the second admission to the hospital was itself an independent emergency seems clearly to have involved a factual issue. See Brown, 898 F.2d at 1571-72. In addition, whether or not the second admission was a continuation of the first seems also to have involved some factual issues.

11

court was called upon to review was the fiduciary's decision that the plaintiff there was not totally disabled, a decision which clearly involved a factual determination. See also Yochum v. Barnett Banks, Inc. Severance Pay Plan, 234 F.3d 541 (11th Cir. 2000) (applying heightened arbitrary and capricious review to fact-based determination as to whether ERISA plan beneficiary turned down "comparable" offer of employment so as to be disqualified from receiving severance).[7]

Although we feel bound by our prior precedent rule, we also note several weaknesses in the Insurers' position. First, not only did the holding of Brown apply to reviewing factual determinations as well as legal interpretations of the plan document, but the language of the Brown opinion suggests that it applies to benefits decisions, whether they involve plan interpretations, factual determinations, or both. The court described its task: "to develop a coherent method for integrating factors such as self-interest into the legal standard for

---

[7]    In Paramore v. Delta Air Lines, Inc., 129 F.3d 1446 (11th Cir. 1997), the plaintiff challenging the denial of her application for ERISA plan benefits argued that, even though under Bruch the plan interpretation decisions of her plan administrator were entitled to deferential arbitrary-and-capricious review, the administrator's factual findings should be reviewed de novo – essentially the mirror image of the issue in Pierre. We held in Paramore that the same abuse-of-discretion standard should be used to review both types of determinations. See id. at 1451 ("[W]e consistently have upheld application of the abuse of discretion standard of review to determinations involving both plan interpretations and factual findings under ERISA."). Our decision here fully comports with our holding in Paramore that the same standard governs review of all benefit determination decisions.

reviewing <u>benefits determinations</u>." <u>Id.</u> at 1561 (emphasis added). It referred throughout the opinion to "benefits determinations" and articulated its holding as applying to "benefits determinations," <u>id.</u> at 1566. Even more significant than the language of the <u>Brown</u> opinion is its underlying rationale: the notion that a fiduciary's duty of loyalty to the beneficiaries might be compromised by the fiduciary's own self-interest. Common sense tells us that this rationale is applicable both to decisions involving plan interpretations and to decisions involving factual determinations; in both, the same self-interest operates such that a "conflicted fiduciary may favor, consciously or unconsciously, its interests over the interests of the plan beneficiaries." <u>Id.</u> at 1565; <u>see also</u> <u>Rowan v. Unum Life Ins. Co. of America</u>, 119 F.3d 433, 436 (6th Cir. 1997) (refusing to afford deference to ERISA plan administrator's findings of fact, because "one party to a contract has an incentive to find facts not in a neutral fashion, but in the manner that is most advantageous to its own interests") (quoting <u>Perez v. Aetna Life Ins. Co.</u>, 96 F.3d 813, 824 (6th Cir. 1996)).

Second, the Insurers' reliance on the Fifth Circuit opinion in <u>Pierre</u> is inapposite. The issue in the instant case is whether the arbitrary and capricious, or abuse of discretion, standard should be modified when the decision of the fiduciary may be tainted by conflict of interest. An entirely different issue was

13

involved in <u>Pierre</u>.  There, the ERISA plan did not expressly confer discretionary authority upon the ERISA fiduciary charged to make benefits decisions.  Of course, in <u>Bruch</u>, the Supreme Court had recently held that a court reviewing such a fiduciary's interpretation of the plan language should conduct a <u>de novo</u> review, unless the plan document expressly conferred upon the fiduciary discretionary authority.  The issue in <u>Pierre</u> was whether the principles of trust law gave such a fiduciary implied authority to make discretionary findings of fact, and whether that and other differences between fact findings and plan interpretations were sufficient to distinguish <u>Bruch</u>, so that a court should defer to such a fiduciary's findings of fact, even though no deference is due to the fiduciary's plan interpretations.  The Fifth Circuit did distinguish <u>Bruch</u> by distinguishing between plan interpretations and findings of fact, did conclude that such a fiduciary would have implied authority to make discretionary findings of fact, and thus concluded that a court reviewing such a fiduciary's findings of fact should do so deferentially under the abuse of discretion standard.[8]

---

[8]     Importantly, however, the court in <u>Pierre</u> did not find that an ERISA fiduciary's factual findings were due the full measure of deference for which the Insurers here argue (arbitrary-and-capricious review only).  Rather, the <u>Pierre</u> court believed that abuse of discretion was a more rigorous standard than arbitrariness.  <u>See id.</u> at 1562 (rejecting arbitrary-and-capricious standard, which it felt Supreme Court "completely" rejected in <u>Bruch</u>, in favor of abuse of discretion standard, which it described as less deferential).  Of course, our ERISA caselaw treats the two standards as synonymous.  It is instructive, however, that <u>Pierre</u> recognized that some heightened review beyond mere arbitrariness was appropriate even for

14

However, the issue with which the Fifth Circuit in <u>Pierre</u> struggled is simply not before this court in the instant case. As noted above, the ERISA plan here confers discretionary authority, and the appropriate standard of review would be the arbitrary and capricious, or abuse of discretion, standard, except for the fact of the conflict of interest. But because of the conflict of interest, the standard of review is altered by our precedent, as described above. The Insurers argue that the <u>Pierre</u> distinction between an ERISA fiduciary's plan interpretations and its findings of fact is a viable distinction, and urge that we extend its holding and make this same distinction, and thus disregard the conflict of interest. We readily reject this argument. Even if the distinction between plan interpretations and findings of fact has some significance with respect to the issue in <u>Pierre</u>[9] – whether discretionary authority has been expressly conferred or

factual determinations.

[9] We note that the Fifth Circuit's holding in <u>Pierre</u> is a decided minority view and has been criticized by several courts of appeal which have since addressed the issue. <u>See</u> <u>Rowan v. Unum Life Ins. Co. of America & S&CO</u>, 119 F.3d 433 (6th Cir. 1997) (rejecting the <u>Pierre</u> holding and construing <u>Bruch</u> to indicate that such a decisionmaker's factual determinations should be reviewed <u>de novo</u> by the court unless the plan document expressly confers such discretion); <u>accord</u> <u>Reidl v. Gen'l American Life Ins. Co.</u>, 248 F.3d 753 (8th Cir. 2001); <u>Kintsler v. First Reliance Standard Life Ins. Co.</u>, 181 F.3d 243 (2nd Cir. 1999) <u>Ramsey v. Hercules, Inc.</u>, 77 F.3d 199 (7th Cir. 1996); <u>Luby v. Teamsters Health Welfare & Pen. Tr. Funds</u>, 944 F.2d 1176 (3rd Cir. 1991). <u>See also</u> <u>Reinking v. Philadelphia American Life Ins. Co.</u>, 910 F.2d 1210 (4th Cir. 1990) (holding to the same effect although decided before <u>Pierre</u>); <u>cf.</u> <u>Paramore v. Delta Air Lines, Inc.</u>, 129 F.3d 1446 (11th Cir. 1997) (addressing the related, but somewhat different, issue involved in the mirror image of the <u>Pierre</u> facts; <u>see</u> <u>supra</u> n.7). However, we need not in this case address that issue which has split the circuits, because the instant case involves the very

appropriately can be implied, which in turn has significance under <u>Bruch</u> as to whether the standard of review should be <u>de novo</u> or abuse of discretion – we are confident that the distinction is relatively insignificant with respect to the very different issue before us – <u>i.e.</u>, whether the standard of review should be altered because the fiduciary is operating under a conflict of interest in order to protect against the fiduciary's self-interest. As previously noted, the holding, the language and the rationale of <u>Brown</u> all apply with equal force not only to an ERISA fiduciary's plan interpretation, but also to its findings of fact. As a matter of common sense, the need to protect against the fiduciary's self-interest applies with equal force to plan determinations and findings of fact made by a conflicted fiduciary in the course of its benefits decision.

Third, although its discussion was arguably dicta, the Supreme Court itself has indicated that the standard of review should be affected by a fiduciary's conflict of interest: "Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that

---

different issue of whether the otherwise appropriate standard of review should be altered because of the fiduciary's conflict of interest. None of the reasons articulated in <u>Pierre</u> and none of the distinctions between plan interpretations and findings of fact therein discussed, undermine the need articulated in <u>Brown</u> for additional scrutiny to protect against the self interest which may taint the reliability of decisions made by a fiduciary operating under a conflict of interest. Indeed, the Fifth Circuit itself in <u>Pierre</u> recognized that the standard of review could be affected by the fiduciary's conflict of interest. <u>See</u> <u>Pierre</u>, 932 F.2d at 1562.

16

conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" Bruch, 489 U.S. at 115, 109 S.Ct. at 957 (quoting Restatement (2d) of Trusts § 187, Comment d (1959)).

In sum, we conclude that the heightened arbitrary and capricious standard of review for decisions by a conflicted ERISA fiduciary applies equally to determinations of fact as to determinations of plan interpretation. Consequently, the district court erred in granting summary judgment for the Insurers based on the more deferential, pure arbitrary and capricious standard.

### B.     Deemed Denial

Torres argues that the denial of his application for benefits should be reviewed de novo, because the Insurers' failure to act on his claim within the time allotted by ERISA regulations (and by the insurance plan's own terms) constitutes a "deemed denial." Because such a denial by operation of law necessarily entails no exercise of administrative judgment or discretion, Torres contends, no deference is due to the Plan Administrator.

The operative ERISA regulations pertaining to this case, the former 29 C.F.R. § 2560.503-1(e)(2), provided that, if an ERISA plan administrator did not act on a claim for benefits within the allotted time – at that time, 90 days from the

date of receipt of the claim, with some possibility for extensions – "the claim shall be deemed denied and the claimant shall be permitted to proceed to the review stage."[10] Here, in response to the Insurers' first motion for summary judgment (on the grounds that Torres failed to exhaust remedies), the district court held that the Insurers' delay in acting on Torres' claim constituted a deemed denial, thus excusing Torres' failure to exhaust the administrative review process before filing suit. In ruling on the instant motion for summary judgment, however, the court did not address Torres' contention that a deemed denial heightened the applicable standard of judicial review.

Some courts have held that, as Torres argues, a deemed denial receives no deference upon judicial review, since the plan administrator did not in fact exercise any discretion. See Gilbertson v. Allied Signal, Inc., 328 F.3d 625, 631 (10th Cir. 2003) (holding that "when substantial violations of ERISA deadlines result in the claim's being automatically deemed denied on review, the district

---

[10] Section 2560.503 was amended effective January 20, 2001, but the changes were made applicable prospectively to claims filed after January 1, 2002, and thus do not affect Torres' claim. (Among other changes, the regulation now gives the plan administrator only 45 days to act on a claim, rather than the 90 days applicable to pre-2002 claims.) The "deemed denial" provision was modified in the revised regulations. See 29 C.F.R. § 2560.503-1(k)(1) ("In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies ... on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.").

court must review the denial <u>de novo</u>, even if the plan administrator has discretionary authority to decide claims."); <u>Jebian v. Hewlett Packard Co.</u>, 310 F.3d 1173 (9th Cir. 2002) (reviewing denial <u>de novo</u>, where plan administrator did not issue decision until after deadline provided by plan had elapsed, and more than a month after beneficiary filed suit); <u>Gritzer v. CBS, Inc.</u>, 275 F.3d 291 (3rd Cir. 2002) (extending no deference to plan administrator's <u>post hoc</u> justification for denying benefits, issued only after commencement of litigation).[11]  Others, however, have held that the fact that the denial occurs by operation of ERISA

---

[11]       The Labor Department has taken the position that a denial occurring without the minimum procedural safeguards provided in the ERISA statutes and regulations should not be reviewed deferentially.  In adopting the version of the "deemed denial" regulation that applies to Torres' claim (based on its date of filing), the Labor Department said that, where an ERISA plan administrator denies benefits without providing a timely and complete notice of decision comporting with ERISA requirements, "[i]t is the Department's view that, in such a case, any decision that may have been made by the plan with respect to the claim is not entitled to the deference that would be accorded to a decision based upon a full and fair review that comports with the requirements of (the ERISA statute)." <u>See</u> Employee Retirement Income Security Act of 1974; Rules and Regulations for Administration and Enforcement; Claims Procedure, 63 Fed. Reg. 48,390, 48,397 (Sept. 9, 1998) (formerly codified at 29 C.F.R. pt. 2560).  The Labor Department reiterated that view in enacting the current version of the "deemed denial" provision, which appears at 29 C.F.R. § 2560.503-1(k)(1). <u>See</u> Employee Retirement Income Security Act of 1974; Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70246, 70255 (Nov. 21, 2000) (codified at 29 C.F.R. pt. 2560) (stating, in explaining deemed denial provision entitling beneficiary to sue without exhausting administrative remedies, that "[t]he Department's intentions in including this provision in the proposal were to clarify that the procedural minimums of the regulation are essential to procedural fairness and that a decision made in the absence of the mandated procedural protections should not be entitled to any judicial deference.").  The parties did not cite this agency explanation, and accordingly, the district court did not have occasion to determine to what extent, if any, the agency interpretation is entitled to deference under <u>Chevron USA, Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 937, 104 S.Ct. 2778 (1984).

regulations does not alter the otherwise-applicable standard of review. See

McGarrah v. Hartford Life Ins. Co., 234 F.3d 1026 (8th Cir. 2000) (holding that

ERISA plan fiduciary's failure to respond to beneficiary's request for

administrative review does not trigger heightened scrutiny, absent showing of

extreme procedural irregularities); Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th

Cir. 1988) (holding that, even though administrative review body failed to act on

claimant's appeal of an initial denial, resulting in a deemed denial, the denial

should be reviewed under the arbitrary-and-capricious standard, because "the

standard of review is no different whether the appeal is actually denied or is

deemed denied")

We cannot tell from the record below why the district court refused Torres'

request to apply the de novo standard in light of the deemed denial. The court's

decision may have been based on a pure legal interpretation – i.e., that the district

court believed that a deemed denial did not alter the applicable standard of

review. However, the decision may also have turned on a more fact- and context-

specific determination – e.g., that there were ongoing exchanges between the

parties warranting time extensions, or that the Insurers here did issue a

determination (albeit one well past the deadline, but before receiving notice of

Torres' suit), which might arguably negate the purpose of applying de novo

20

review to an ordinary deemed denial, in which there is no exercise of administrative discretion to be reviewed. Or, it may be that the district court simply ignored Torres' deemed denial argument.

In any event, because the district court has not addressed Torres' deemed denial argument, and because its resolution might be affected by the facts and circumstances, we prefer for the district court to address the issue in the first instance. On remand, the district court should address the issue and determine whether Torres' argument warrants further alteration of the appropriate standard of review.

### C.    Other Issues to be Resolved on Remand

Torres argues that the district court erred in excluding from the record to be considered Torres' supplemental submission, in particular the Aetna letters of June 1999 and February 2001 declaring that Torres was unable to work at any reasonable occupation. The Insurers respond that exclusion was appropriate because Torres submitted this evidence after the instant suit was filed on February 22, 2001. Because the Insurers do not explain why the filing of the suit should cut off consideration of this supplemental evidence, but not cut off consideration of the Insurers' own decision letter of March 15, 2001, because the

21

district court's discussion of this issue was inadequate, because the briefs on appeal with respect to this issue are inadequate, and because resolution of this issue may be affected by the other issues remanded for the district court's initial resolution, we vacate the district court's decision with respect to this issue and remand for the district court to address anew on remand. We express no opinion with respect to resolution of the issue.

We also note that the Insurers placed primary reliance in their brief on appeal, and also at oral argument, on what they characterize as evidence of fraud by Torres – discrepancies between Torres' description of circumstances of the accident and the police report of the incident; the timing of Torres' claim (filed the day Brinks announced that the Jacksonville office was being closed); alleged exaggerations in Torres' accounts to his doctors of the severity of the accident and its causal link to his injuries; and Torres' criminal record and disciplinary record with the Florida Department of Insurance. Because the district court did not in its decision rely at all on fraud, because it is not at all clear that the Insurers' decision denying Torres' claim was based in part on fraud, and because it is not clear that the Insurers' March 15, 2001, denial letter afforded notice to Torres that his claim was denied in part on the basis of fraud and an opportunity to respond thereto, we decline to address the significance of the Insurers'

22

assertions of fraud.  We prefer for the issue to be addressed in the first instance by the district court, and we express no opinion thereon.

## III.  CONCLUSION

We hold that, where a conflict of interest exists, an ERISA plan administrator's decision to deny benefits is to be reviewed under the heightened arbitrary-and-capricious standard of Brown, regardless of whether the decision turns on findings of fact or on interpretations of plan terminology.  We therefore conclude that the district court erred in granting summary judgment under the more deferential arbitrary and capricious standard.  Accordingly, we vacate the grant of summary judgment and remand for the Insurers' decision to be reviewed under (at least) the heightened Brown standard, with the possibility that – depending on the district court's resolution of the matters discussed supra – de novo review might instead prove to be appropriate.  We further vacate the district court's ruling denying Torres the opportunity to supplement the record, and direct that the court reconsider Torres' motion in light of all of the circumstances of this case.

The judgment of the district court is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.[12]

VACATED AND REMANDED.

---

[12]Developments on remand may prompt the district court to explore whether it would be appropriate to remand to the plan administrator. We express no opinion thereon, preferring for the district court to assess the relevant facts and case law in the first instance.