Francis T. O'REARDON, Plaintiff,

v.

**PRINCIPAL LIFE INSURANCE COM-PANY, Johnson & Company Group Benefit Plan, and Plan Administrator for Johnson & Company Group Benefit Plan, Defendants.**

No. 6:02–CV–991–ORL–22AB.

United States District Court,
M.D. Florida,
Orlando Division.

Jan. 3, 2004.

Brandon S. Peters, Morgan, Colling & Gilbert, Orlando, FL, for Plaintiff.

Nina K. Brown and Gary J. Guzzi, Akerman Senterfitt, Miami, FL, for Defendants.

#### ORDER

CONWAY, District Judge.

### I. INTRODUCTION

This cause comes before the Court for consideration of the Defendants' Motion for Summary Judgment (Doc. No. 28), filed July 28, 2003, to which the Plaintiff responded on October 6, 2003 (Doc. No. 38); and the Plaintiff's Motion for Summary Judgment (Doc. No. 38), filed Octo-ber 6, 2003, to which the Defendants responded (Doc. No. 50) on October 29, 2003. On December 18, 2003 United States Magistrate Judge David A. Baker issued a Report and Recommendation (R & R) concerning the abovementioned motions (Doc. No. 57). In his memorandum opinion, Judge Baker recommends that the undersigned judge grant the Defendants' Motion for Summary Judgment (Doc. No. 28), and deny the Plaintiff's Motion for Summary Judgment (Doc. No. 38). The Plaintiff filed Objections (Doc. No. 62) to Judge Baker's R & R on December 24, 2003. Having reviewed the R & R and the objections thereto, the Court **APPROVES** and **ADOPTS** Judge Baker's well-reasoned recommendations (Doc. No. 57). As a result, the Plaintiff's Objections (Doc. No. 62) are **OVERRULED**.

### II. LEGAL ANALYSIS

When a magistrate judge issues a report and recommendation, the district judge must make a *de novo* determination of the findings and/or recommendations to which any party objects. *See* 28 U.S.C. § 636(b)(1)(C) (2003). "This requires that the district judge 'give fresh consideration to those issues to which specific objection has been made by a party.'" *Lacy v. Apfel,* 2000 WL 33277680, 2000 U.S. Dist. Lexis 21437, *2–3 (M.D.Fla. Oct. 20, 2000) (quoting *Jeffrey S. v. State Bd. of Educ.,* 896 F.2d 507, 512 (11th Cir.1990)). "In the absence of specific objections, there is no requirement that a district judge review factual findings *de novo.*" *Lacy,* 2000 WL 33277680, 2000 U.S. Dist. Lexis 21437 at *3 (emphasis added) (internal citation omitted). However, regardless of whether objections are filed, a district judge must review a magistrate's legal conclusions *de novo. See id.* After reviewing a report and recommendation, objections, and responses thereto, the district judge may accept, reject, or modify, in whole or in

part, the findings or recommendations made by the magistrate judge. *See* § 636(b)(1)(C).

Applying these principles, the Court finds the Plaintiff's Objections (Doc. No. 62) to Judge Baker's Report and Recommendation (Doc. No. 57) without merit. The insurance policy at issue here covered mental health treatment administered by a "hospital" as that term is defined by the policy. Notwithstanding the unique circumstances surrounding the patient's treatment in this instance, the Renfrew Center is not a "hospital." Accordingly, there is no genuine issue of material fact with respect to the Principal's interpretation of the term "hospital."

## III. CONCLUSION

Having conducted a *de novo* review of the facts and law presented in this matter it is **ORDERED** that:

1. The December 18, 2003 Report and Recommendation issued by Judge David A. Baker (Doc. No. 57) is **APPROVED** and **ADOPTED**.

   (a) The Defendants' July 28, 2003 Motion for Summary Judgment (Doc. No. 28) is **GRANTED**.

   (b) The Plaintiff's October 6, 2003 Motion for Summary Judgment (Doc. No. 38) is **DENIED**.

2. The Plaintiff's December 24, 2003 Objections to Judge David A. Baker's Report and Recommendation (Doc. No. 62) are **OVERRULED**.

3. The Clerk shall enter a final judgment providing that the Plaintiff, Francis T. O'Reardon, shall take nothing on his claims against the Defendants. The judgment shall further provide that the Defendants shall recover their costs arising from this action.

4. All other pending motions are **DENIED** as **MOOT**.

5. The clerk is directed to close the case.

REPORT AND RECOMMENDATION

BAKER, United States Magistrate Judge.

## TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration without oral argument on the following motions filed herein:

> **MOTION: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 28)**
>
> **FILED:** July 28, 2003
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.
>
> **MOTION: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 38)**
>
> **FILED:** October 6, 2003
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

Plaintiff Francis T. O'Reardon filed suit against Defendants Principal Life Insurance Company, Johnson & Company Group Benefit Plan and Plan Administrator for Johnson & Company Group Benefit Plan (collectively the "Defendants") seeking to be reimbursed for his daughter's residential treatment for eating disorders and depression at The Renfrew Center, a licensed treatment facility. The Defendants refused to pay Plaintiff's claim, and he filed suit in this Court. The parties have filed cross-motions for summary judgment. Doc. Nos. 28, 38.

STANDARD FOR SUMMARY JUDGMENT

A party is entitled to judgment as a matter of law when the party can show that there is no genuine issue as to any material fact. Fed. R. Civ. Pro. 56(c). The substantive law applicable to the case

determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## BACKGROUND FACTS [1]

The parties agree that the central issue is whether Plaintiff's health insurance policy (the "Plan") provides coverage for the residential treatment Plaintiff's dependent daughter received at The Renfrew Center. Thus, they have stipulated to most material facts. Doc. No. 28 at 2 ("Statement of Jointly Stipulated Facts"). Plaintiff's dependent daughter, Kathleen O'Reardon, was at all relevant times insured under the Principal Life group health insurance policy (the "Policy"). Doc. No. 28, Ex. A and B.

Kathleen was admitted to The Renfrew Center on an in-patient basis for treatment for eating disorders. Doc. No. 28 ¶ 3. She was a patient there for 28 days, from March 26, 2002 through April 22, 2002, at a cost of $37,800. *Id.* Her eating disorders are considered a mental or nervous disorder, as defined in the nomenclature of the American Psychiatric Association. *Id.* ¶ 4. The Renfrew Center is licensed by the

State of Florida as a residential treatment facility; it is not licensed as a hospital. *Id.* ¶ 5. Through The Renfrew Center's affiliations with local hospitals, patients at the Renfrew Center have access to certain diagnostic and medical facilities. *Id.* ¶ 7.

## ANALYSIS

### STANDARD OF REVIEW FOR ERISA CASES

▇ Plaintiff filed his Complaint for reimbursement of his daughter's medical care under the Employee Retirement Income Security Act ("ERISA"). In *Buckley v. Metropolitan Life,* the Eleventh Circuit set forth three standards of review that a court may apply in reviewing a plan administrator's claims decisions: "(1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary and capricious [where] the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interests." 115 F.3d 936, 939 (11th Cir.1997). As recently explained by Judge Lazzara:

> When the plan documents explicitly grant the claims administrator the discretion to determine eligibility or construe the terms of the plan, the arbitrary and capricious standard is applied. *See HCA Health Serv. of Georgia, Inc. v. Employers Health Ins. Co.,* 240 F.3d 982, 992 (11th Cir.2001) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). The Eleventh Circuit has modified this arbitrary and capricious standard in cases in which the claims administrator was acting under a conflict of interest. *See HCA Health Serv.,* 240 F.3d at 993 (citing *Florence Nightingale Nursing Serv. Inc. v. Blue Cross/Blue Shield,* 41 F.3d 1476, 1481 (11th Cir. 1995)). The modified standard is called

1. The parties agree that the underlying material facts are undisputed. *See* Doc. No. 18.

the "heightened" arbitrary and capricious standard. *See Levinson v. Reliance Standard Life Ins. Co.,* 245 F.3d 1321, 1325–26 (11th Cir.2001); *Brown v. Blue Cross & Blue Shield of Ala., Inc.,* 898 F.2d 1556, 1563–64 (11th Cir.1990) (noting that heightened standard "must be contextually tailored" to case).

Once the court determines whether the plan documents grant discretion to the claims administrator to interpret the terms, then the court must apply at the very least the arbitrary and capricious standard and possibly the heightened arbitrary and capricious review. *See HCA Health Serv.,* 240 F.3d at 993. "Regardless of whether arbitrary and capricious or heightened arbitrary and capricious review applies, the court evaluates the claims administrator's interpretation of the plan to determine whether it is 'wrong'." *See id.* An administrator's decision is deemed "wrong" when the court disagrees with the claims administrator's plan interpretation after a de novo review of the plan documents and disputed terms. *See id.* at 994 n. 23. If the court disagrees with the decision and thus finds it "wrong," then the court next decides whether "the claimant has proposed a 'reasonable' interpretation of the plan." *See id.* at 994, quoting *Lee v. Blue Cross/Blue Shield,* 10 F.3d 1547, 1550 (11th Cir.1994).

Even if the claimant's proposed interpretation is reasonable, the court must still determine whether the claims administrator's "wrong" interpretation is reasonable. At this point, the court must gauge the self interest of the claims administrator. See *HCA Health Serv.,* 240 F.3d at 994. If there is no conflict of interest, then the inquiry stops, and review is arbitrary and capricious. *See id.* If a conflict does exist, then the heightened arbitrary and capricious review must be invoked. See *id.*

*Migliaro v. IBM Long–Term Disability Plan,* 231 F.Supp.2d 1167, 1177 (M.D.Fla. 2002). The heightened arbitrary and capricious standard of review for decisions by a conflicted ERISA fiduciary applies to both determinations of fact and to determinations of plan interpretation. *Torres v. Pittston Co.,* 346 F.3d 1324, 1332 (11th Cir.2003).

The parties agree that the Policy provides Principal, as the plan administrator, with discretionary authority: "[Principal] reserve[s] complete discretion to construe or interpret the provisions of this group insurance, to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided. Our decisions in such matters will be controlling, binding, and final." Doc. No. 1, Ex. A, Group Benefit Plan at GH100A. Thus, one of the two arbitrary and capricious standards applies.

Defendants contend that it does not matter which of the arbitrary and capricious standards is used, because under either standard, the result is the same—its decision was not wrong—and the Court need not decide which standard applies. Defendants contend that there was a reasonable basis for Principal's decision to deny benefits because The Renfrew Center is not a facility covered under the Policy.

Plaintiff contends that the heightened arbitrary and capricious standard applies because Principal, in addition to being the plan administrator, is also the carrier responsible for paying the claims, based on the following language: "This plan has chosen benefits provided by a Group Policy issued by Us, Principal Life Insurance Company. To the extent that benefits are provided by that Group Policy, the administration and payment of claims will be done by Us as an insurer." Doc. No. 1, Ex. A at GH100A.

The Defendants are correct in that, regardless of which of the two arbitrary and capricious reviews applies, the Court must first evaluate Principal's interpretation of the plan to determine whether it is "wrong," *i.e.*, whether the Court disagrees with Principal's interpretation after a de novo review of the plan documents and disputed terms. Because the Court finds Principal's decision was not wrong, it does not reach the issue of which arbitrary and capricious standard of review applies.

### WHETHER THE RENFREW CENTER IS A "HOSPITAL" AS DEFINED IN THE POLICY

It is undisputed that for coverage of in-patient mental health or behavioral treatment services, the Policy provides for benefits when an insured is "Hospital Inpatient Confined" in a Psychiatric Hospital or a psychiatric unit of a general Hospital. Doc. No. 1, Ex. B, GC 5014 at 4. To be "Hospital Inpatient Confined" requires that the insured be treated at a "Hospital" as defined in the Policy. *Id.* at GC 5002 at 9. The Policy defines "Hospital" as:

Hospital. An institution that is licensed as a Hospital by the proper authority of the state in which it is located, but not including any institution, or part thereof, that is used primarily as a clinic, Skilled Nursing Facility, convalescent home, rest home, home for the aged, nursing home, custodial care facility or training center. Hospitals will also include an Ambulatory Surgical Center.

For the purpose of Mental Health or Behavioral Treatment Services and Alcohol or Drug Abuse Treatment Services, the definition of "Hospital" will include each of the following facilities provided it is licensed by the proper authority of the state in which it is located:

a. a Psychiatric Hospital; and

b. an Inpatient Alcohol or Drug Abuse Treatment Facility; and

c. any other facility required by state law to be recognized as a treatment facility under this Group Policy.

*Id.* It is undisputed that The Renfrew Center is not licensed by the State of Florida as a hospital and will not qualify on that basis.

■ Plaintiff concedes that The Renfrew Center is "not a traditional hospital." Doc. No. 38. Instead, Plaintiff contends that Florida Statute § 627.668 requires Defendants to provide "necessary" mental health benefits, including in-patient benefits, and in this case, treatment at The Renfrew Center. Section 627.668 states in pertinent part:

(1) Every insurer ... transacting group health insurance ... in this state shall make available to the policyholder ... the benefits or level of benefits specified in subsection (2) for the necessary care and treatment of mental and nervous disorders, as defined in the standard nomenclature of the American Psychiatric Association.

\* \* \* \* \* \*

(2) (a) Inpatient benefits may be limited to not less than 30 days per benefit year as defined in the policy or contract.

Fla. Stat. § 627.668. Plaintiff argues that because the health care professionals who have treated Kathleen O'Reardon agreed that inpatient treatment was necessary to treat Kathleen's eating disorders, Defendants are required, under § 627.668, to reimburse Plaintiff for care at The Renfrew Center. Plaintiff alternatively argues The Renfrew Center qualifies as a hospital under the Policy's definition of Hospital, under subparagraph (c), as "any other facility required by state law to be recognized as a treatment facility under this Group Policy." If the meaning of the provision is ambiguous, Plaintiff argues, then

it should be construed against the Defendants.

Defendants respond that, even if the treatment at The Renfrew Center was appropriate for Kathleen, it still is not covered because it was provided at a facility that is not covered under the Policy. They argue that § 627.668 merely requires Principal to offer its insureds a certain minimum level of benefits for mental and nervous disorders (no less than 30 days for inpatient treatment) and the Policy does provide for this level of benefits as long as they are provided at a covered facility. Doc. No. 1, Ex. B at GC 5014 at 4. Defendants argue, had the patient been provided with the treatment at a facility that is licensed as a hospital by the State of Florida, then there likely would not have been any issue concerning whether the facility was covered under the Policy. Since Plaintiff decided to obtain treatment for his daughter at a facility that was not covered under the Policy, rather than at a hospital that was covered, he cannot seek benefits that simply are not payable under the Policy.

The Court finds Defendants' argument persuasive. Section 627.668 requires the insurer to provide a minimum of at least 30 days coverage for inpatient treatment of mental and nervous disorders, but does not mandate where. The Policy does provide coverage for 30 days of inpatient services for mental health or behavioral treatment services. Doc. No. 1, Ex. B at GC 5014 at 4. Plaintiff's interpretation of § 627.668 would require the insurer to provide treatment at *any* facility of Plaintiff's choosing, as long as a medical professional found treatment of the patient's condition to be "necessary." Plaintiff's own experts do not opine the treatment "necessarily" had to be at The Renfrew Center,

but merely that Kathleen would benefit from the approach to treatment at an inpatient "facility *such as* The Renfrew Center." Doc. No. 38, Aff. of Janovitz, Grooms[2]. As Defendants point out, Florida law does not specify where, or the categories of inpatient facilities for which, the insurer must provide benefits. *Cf.* TEX. INS. CODE § 3.70–2(F) (specifying that coverage for in-patient mental or emotional illness be allowed at psychiatric day treatment facility, treated as if services provided by a hospital on an in-patient basis).

Directly on point is the case of *Eisenberg v. Principal Life Insurance Company,* 276 F.Supp.2d 1077 (D.Nev.2003), which granted summary judgment to Principal on its denial of benefits for treatment of an eating disorder at a non-hospital treatment facility, under policy provisions identical to this case. In *Eisenberg,* the insured's dependent daughter suffered from an eating disorder and was treated at a medical facility that was not licensed as a hospital by the State of Nevada. *Id.* at 1082. Principal denied plaintiff's claim for reimbursement for treatment at the residential treatment center, a non-hospital facility. *Id.*

The court rejected plaintiff's argument that, because plaintiff's chosen treatment center was a "medical facility" under state law, somehow Principal is required to include institutions like [it] in the Plan's definition of "hospital"; the clear language of the state statute did not require coverage in *any* medical facility. *Id.* [emphasis added]. The court also rejected plaintiff's suggestion that the policy was ambiguous because the plan "plainly states that [plaintiff] and his dependents are covered for in-patient mental health coverage in an

---

**2.** There has been no contention or showing that other suitable facilities, meeting the definition under the policy, were unavailable.

institution that meets the Plan's definition of hospital. The Plan unambiguously defines hospital as an institution that is licensed as such." *Id.* at 1083. Similarly, this Court finds the Policy in this case is unambiguous for the same reason—the Policy unambiguously defines hospital as an institution licensed as such by the state. Doc. No. 1, Ex. B, GC 5002 at 9.

For purposes of deciding the parties' cross-motions for summary judgment, the issue is whether Principal's interpretation of the Policy was "wrong." After a de novo review of the plan documents and disputed terms, the Court finds that Principal's interpretation of the Policy was not wrong. The Policy covered the type of mental health treatment Kathleen required if Plaintiff chose to send her to the type of institution that was included in the Policy's definition of "hospital." The Renfrew Center was not a "hospital" licensed by the state. There being no evidence that Principal's interpretation was arbitrary and capricious, there is no genuine issue of material fact and summary judgment is warranted in Defendants' favor. *See Eisenberg,* 276 F.Supp.2d at 1083 (granting summary judgment to plan administrator on plaintiff's claims for treatment at non-hospital medical facility).

The Court does not question that the treatment of eating disorders at a "licensed treatment facility" may make sense for certain patients. Indeed, it may well be that a health care plan that includes such facilities would be better for insured and insurer alike, though the record is silent on this point. However, within the dictates of statutory mandates, it is for Principal to design the elements of the coverage it chooses to offer. Such judgments entail business and medical considerations as to direct and administrative costs with respect to inclusion or exclusion of procedures and providers. In particular, it is not irrational to limit certain treatments to those provided at a licensed hospital so that the insurer does not have to investigate each and every "treatment facility" in order to provide approval.

It is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. No. 28) be **GRANTED** and Plaintiff's Motion for Summary Judgment (Doc. No. 38) be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

December 18, 2003.