**Bonnie BRUCKS, Plaintiff,**

v.

**THE COCA–COLA COMPANY, et al., Defendants.**

No. 1:03–CV–2492–WSD.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 30, 2005.

1194

Kurt Russell Ward, Pamela Ilene At-kins, Galler & Atkins, Atlanta, GA, Pau-lette R. Adams–Bradham, Adams–Brad-ham, Roswell, GA, for Plaintiff.

David Tetrick, Jr., Michael Wayne John-ston, Michael Wayne Johnston, Michael Wayne Johnston, King & Spalding, Mi-chael Andrew Coval, Tiffany D. Downs, Carter & Ansley, Atlanta, GA, for Defen-dants.

### ORDER

DUFFEY, District Judge.

This is an action in which Plaintiff Bon-nie Brucks ("Plaintiff") seeks long-term disability benefits under an employee ben-efit plan established and maintained by her employer, Defendant The Coca–Cola Com-pany, and governed by the Employee Re-tirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. It is before the Court on Plaintiff's Motion for Summary Judgment [37], Defendants Reli-aStar Life Insurance Company, Kemper National Services, Inc. and NATLSCO, Inc.'s (collectively, the "ReliaStar Defen-dants") Motion for Summary Judgment [39], Defendants The Coca–Cola Company, The Coca–Cola Company Long Term Dis-ability Income Plan and The Coca–Cola Company Long Term Disability Income Plan Committee's (collectively, the "Coca–Cola Defendants") Motion for Summary Judgment [42], and Plaintiff's Motion and Memorandum of Law for Leave to Supple-ment Her Summary Judgment Pleadings [64].

## I. BACKGROUND

Unless otherwise indicated, the Court draws the undisputed facts from the par-ties' statements of undisputed material facts filed in support of their respective motions for summary judgment [38, 41, 45] and the responses to them [49, 52, 54, 56]. Local Rule 56.1 provides that all material facts contained in the moving party's state-ment which are not specifically controvert-ed by the respondent in respondent's statement shall be deemed to have been admitted. See L.R. 56.1(B)(2), N.D. Ga. If, however, the non-movant has disputed a specific fact in their response and pointed to evidence in the record supporting their version of events, the Court views all evi-dence and factual inferences in the light most favorable to the non-movant, as re-quired on a motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Ra-dio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); McCabe v. Sharrett, 12 F.3d 1558, 1560 (11th Cir. 1994); Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir.1993).[1]

### A. The Parties & the Plan

Defendant The Coca–Cola Company's Long Term Disability Income Plan ("the Plan") is an employee welfare benefit plan sponsored and maintained by Defendant The Coca–Cola Company ("Coca–Cola") within the meaning of ERISA, 29 U.S.C. § 1002(1). The terms of the Plan are sum-marized in the Summary Plan Description (the "SPD"), which was provided to Coca–Cola employees who were eligible to par-ticipate in the Plan. Eligible employees also were provided an Administrative In-

---

1. The administrative record in this case (the "Record") was filed by the Coca–Cola Defen-dants as a three-part appendix attached to their Amended Answer and Affirmative De-fenses [7, 8, 9].

formation Booklet (the "Administrative Booklet") for the Plan, which explained an eligible employee's rights and obligations under the Plan. Both the SPD and the Administrative Booklet were in effect at all times relevant to Plaintiff's claim.

Under the Plan, "Disability" is defined as follows:

> During the 24 months next following his Disability Date, the Participant will be considered to have a Disability if a physical or mental illness or injury continuously disables him from performing his normal duties for his Employer, provided that he is not at any time engaged in any other occupation or employment for wage or profit as determined by the Administrative Services Provider. After the first 24 months, the Participant will be considered to have a Disability if a physical or mental illness or injury continuously disables him from engaging in any occupation for wage or profit, for which he is reasonably qualified by training, education or experience.[2]

The Plan, as amended, designated Coca–Cola as the Plan Administrator and the Plan Sponsor. As the Plan Administrator, Coca–Cola established Defendant The Coca–Cola Company Long Term Disability Income Plan Committee (the "Committee"). The Committee is the Plan's named Fiduciary, and is vested with exclusive responsibility, discretion, and authority to construe the terms of the Plan and to determine eligibility of all participants to receive benefits and the amount of those benefits. The Plan states in relevant part:

> (b) Powers. The Committee will have primary responsibility for the administration of the Plan, and all powers necessary to enable it to proper-

ly perform its duties, including but not limited to the following powers and duties:

> . . .
>
> (2) Construction. The Committee will have the exclusive responsibility and complete and final discretionary authority to construe the Plan and to decide all questions arising under the Plan . . . and all actions or determination of the Committee shall be final, conclusive and binding.
>
> (3) Right to Benefits. The Committee will have the exclusive responsibility and the complete and final discretionary authority to determine the eligibility of all Participants to receive benefits and the amount of benefits to which any Participant may be entitled under the Plan, and to enforce the claims procedure described in Sections 7.12, and all actions or determinations of the Committee shall be final, conclusive and binding on all persons.

The Plan is funded entirely by Coca–Cola through irrevocable contributions to the Trust Forming a Part of The Coca–Cola Company Long Term Disability Income Plan (the "Trust").

The Plan provides for initial claims determination by its administrative service providers, followed by two levels of appeal on adverse benefits determinations, with the Committee making the final decision. Beginning on January 1, 1991, Defendant ReliaStar Life Insurance Company ("ReliaStar") (then known as Northwestern National Life Insurance Company) and Coca–Cola entered into an administrative services only agreement (the "ASO Agree-

---

**2.** In her response to the Coca–Cola Defendants' Statement of Material Facts, Plaintiff disputes this definition of "Disability" under the Plan. She refers the Court to the definition of "Disability" contained in the SPD. These definitions, although structured differently, are identical in substance, and the result reached here is the same under either of them. (*Compare* Record at 310 *with* Record at 366.)

ment") under which ReliaStar was to perform certain administrative tasks such as record keeping, processing and investigating claims for benefits, and forwarding information to the Committee for its review and final decision on whether to pay or deny claims. Included in ReliaStar's tasks under the ASO were certain claim payment services:

1. [ReliaStar] will promptly and efficiently provide the following services in accordance with the terms of the Plan Document:

. . .

b. Investigate and process claims with respect to Participants and determine the amount due and payable.

. . .

d. Investigate and process any written requests or inquiries received on appeals of denied claims, and forward the information (including a claim decision recommendation) to [Coca–Cola] for review and a final decision on whether to pay or deny the claim. Upon receipt of [Coca–Cola's] decision, make payment or issue a denial in accord with [Coca–Cola's] decision.

The Plan and the ASO Agreement state that only Coca–Cola possessed the final responsibility and liability for review of denied claims and liability for claim payments. As part of its administrative tasks, ReliaStar paid benefits from an account funded entirely by Coca–Cola. ReliaStar did not pay benefits from its own assets.

From 1991 to August 1, 1999, ReliaStar performed its prescribed duties under the ASO Agreement. On August 1, 1999, ReliaStar assigned a portion of its administrative obligations under the ASO Agreement to Defendant NATLSCO, Inc. ("NATLSCO"). From August 1, 1999, through December 31, 2002, NATLSCO, through its wholly owned subsidiary Defendant Kemper National Services, Inc. ("Kemper"), performed these administrative services, including record keeping, processing and investigating claims for benefits made under the Plan. Like ReliaStar, NATLSCO paid benefits from an account funded entirely by payments from Coca–Cola. NATLSCO did not pay benefits from its own assets, nor did it insure or enter into any insurance or reimbursement agreement with Coca–Cola. The ASO Agreement between ReliaStar and Coca–Cola and the assignment from ReliaStar to NATLSCO terminated effective December 31, 2002. Thereafter, ReliaStar, NATLSCO or Kemper did not perform services on behalf of Coca–Cola or the Plan.

Plaintiff was employed by Coca–Cola as an IS Manager/System Support Specialist V, a position which required her to provide technical computer support services on a global basis throughout Coca–Cola, to administer, monitor and repair the Company's computer mainframe processing hardware and software systems, to perform system optimizations, and to develop plans for future capacity. She also was required to carry a pager so that she could respond quickly to requests for her services 24 hours a day, 7 days a week. During her 7.5 hour regular workday, Plaintiff typically sat for 7.5 hours, worked under deadlines for 7.5 hours, and worked around others for 7.5 hours. As a full-time employee, she was a participant in the Plan.

**B. Plaintiff's Claim for Benefits**

In 1997, Plaintiff began experiencing symptoms associated with Chronic Fatigue Syndrome ("CFS"), including significantly impaired concentration, migraine headaches, disturbed sleep and severe fatigue. The symptoms became so severe that, as of December 2000, Plaintiff believed she was unable to perform the normal duties of her occupation. On December 11, 2000, Plaintiff applied to Coca–Cola for short-

term disability income benefits.[3] That claim was approved, and short-term disability benefits were paid until the allowable short-term benefit period expired on June 10, 2001.

In May 2001, Plaintiff sought long-term disability benefits under the Plan. When she applied, Plaintiff submitted an Attending Physician's Statement and an Estimated Physical Abilities form, both of which were completed by her physician Dr. Virginia Soules. Dr. Soules diagnosed Plaintiff with "probable chronic fatigue syndrome." Plaintiff also submitted records from a rheumatologist, Dr. Sanford Hartman, a neurologist, Dr. William Stuart, and an ophthalmologist, Dr. Nancy Weiner.[4]

NATLSCO reviewed Plaintiff's application and denied Plaintiff's claim for benefits on July 9, 2001, concluding she did not satisfy the Plan's definition of Disability. NATLSCO stated that its review of Plaintiff's medical records was inconclusive for the diagnosis suggested by Dr. Soules, and that "[e]ven assuming a coexisting condition of chronic fatigue syndrome, there is no documentation of objective clinical findings to support the physical limitations on the Estimated Physical Abilities Form and Attending Physician's Statement. Specifically, there is no docu-

mentation of objective muscle weakness, sensory exam abnormalities, decreased range of motion, synovitis, or any joint abnormalities." (Record at 222.) NATLSCO advised Plaintiff of her appeal rights, including her right to "submit new or additional medical evidence or documentation to support [her] position." (*Id.*)

On September 5, 2001, Plaintiff, employing the Plan's administrative remedies process, appealed the denial of her claim. In support of her appeal, Plaintiff submitted an August 31, 2001 letter from Dr. Soules. Dr. Soules' letter stated her reasons for diagnosing Plaintiff as having CFS,[5] and reiterated her statement of Plaintiff's limitations. On December 7, 2001, after reviewing Plaintiff's appeal, NATLSCO affirmed the denial of Plaintiff's claim: "Based on a thorough review of all documentation provided, there are insufficient objective clinical findings (i.e. detailed musculoskeletal exam findings, functional capacity evaluation, etc.) to support significant impairments in functioning that would prevent you from performing the normal duties of your occupation as a Systems Support Specialist V." (Record at 167.) In its letter, NATLSCO notified Plaintiff of her right to appeal its denial to the Committee. It expressly advised Plaintiff that her second appeal should include the ob-

---

**3.** Coca–Cola provides short-term disability benefits to its eligible employees as a payroll practice. Under the short-term disability program, an employee out of work due to an illness or injury may receive 100% of her pay for up to six months. After the six-month elimination period, the employee may begin receiving long-term disability benefits if she proves she is entitled to benefits under the Plan.

**4.** Plaintiff relies on these records to support her CFS diagnosis, arguing that the findings of Drs. Hartman, Stuart and Weiner demonstrated that her symptomology was consistent with CFS. For instance, she argues Dr. Stuart's tests were negative for rheumatoid

arthritis and fibromyalgia and therefore ruled out these conditions as causes for Plaintiff's symptoms, and that Dr. Weiner concluded there was no neuro-ophthalmological basis for her reported photo-sensitivity, which she argues is consistent with CFS. (Pl.'s Statement of Material Facts [38] at 7–9.) Plaintiff's CFS diagnosis is not in dispute here. Other than her reported symptoms, these records do not contain evidence that Plaintiff's CFS rendered her unable to perform the normal duties of her position.

**5.** The letter appeared to remove Dr. Soules' previous qualification that the diagnosis was "probable" CFS.

jective evidence it found lacking in her initial claim and first appeal:

> You must state the reasons you believe your claim should have been treated differently, and (you [sic] must include additional facts or pertinent information, from your physician(s) to substantiate your position, ... [including] [o]bjective medical evidence or documentation to support your position (i.e. abnormal musculoskeletal exam findings, functional capacity evaluation, diagnostic testing, reports, etc.)); and [a]ny documentation that would support your inability to perform your regular occupation as a Systems Support Specialist V.

(*Id.* at 167–68.)

On February 4, 2002, Plaintiff submitted her second and final appeal to the Committee. Aside from her appeal letter, the record does not reflect that Plaintiff submitted additional medical records or other documentation to support her claim. The Committee upheld the decision to deny Plaintiff's claim for benefits, and issued a final denial by letter dated April 19, 2002. In its denial letter, the Committee did not contest Dr. Soules's CFS diagnosis. Rather, it explained that "[a] mere diagnosis or an Attending Physician's Statement indicating disability will not be considered sufficient to award Company LTD Plan benefits without appropriate medical examinations and tests to support a level of impairment that would prevent the participant from working." (Record at 3–4) ("The Committee does not dispute [Plaintiff's] CFS diagnosis. However, such con-

dition is not necessarily disabling."). The Committee further stated that it construed the Plan's requirement that a participant "include with his application a medical certification of his Disability" as requiring participants to submit a medical certification which includes "objective medical evidence which reasonably substantiates a participant's inability to work due to a physical or mental illness or injury." (*Id.*) This litigation followed.

## II. DISCUSSION

Plaintiff asserts four claims: (1) a claim for recovery of long-term disability benefits and for clarification of her rights to future benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B); (2) a claim under 29 U.S.C. § 1140 for interference with Plaintiff's right to benefits under other employee benefit plans provided by Coca–Cola; (3) a claim for failure to provide Plan documents under 29 U.S.C. § 1132(c); and (4) a claim for her attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1).[6] Each of these claims is asserted against all Defendants, with the exception of Plaintiff's claim for intentional interference with Plaintiff's rights under other benefit plans, which is asserted against the Coca–Cola Defendants only.

The ReliaStar Defendants and the Coca–Cola Defendants have moved for summary judgment on Plaintiff's claims. Plaintiff opposes these motions, and also has filed a cross-motion for summary judgment against all Defendants on her claim for wrongful denial of disability benefits under Section 1132(a)(1)(B).[7]

---

**6.** Plaintiff originally asserted a claim for breach of fiduciary duty. The Court dismissed this claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (*See* September 28, 2005 Order [63] at 13.)

**7.** Although Plaintiff's motion purports to seek summary judgment on all of her claims, (*see* Pl.'s Mot. for Summ. J. at 1–3), her Memorandum of Law filed in support of the motion

addresses only her claim for wrongful denial of benefits (*See* Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. at 12–19). Accordingly, to the extent Plaintiff moves for summary judgment on her claims for intentional interference with her alleged right to benefits under other Coca–Cola benefit plans and for failure to provide Plan documents, her motion is DENIED for failure to carry her burden as the movant on summary judgment to establish that there are no genuine issues of mate-

## A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *Herzog v. Castle Rock Entm't,* 193 F.3d 1241, 1246 (11th Cir.1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. *Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1282 (11th Cir.1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." *Id.*

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor. *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.,* 894 F.2d 1555, 1558 (11th Cir.1990). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury...." *Graham,* 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Herzog,* 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. *Matsushita Elec. Indus. Co., Ltd. v. Ze-*

rial fact and that she is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56;

*nith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In this case, all parties have moved for summary judgment. The Court views all evidence and factual inferences in the light most favorable to Plaintiff in assessing Defendants' motions for summary judgment, and in the light most favorable to Defendants in assessing Plaintiff's motion for summary judgment.

## B. Standard of Review

The Supreme Court has established three distinct standards for evaluating a plan administrator's or fiduciary's decision to deny benefits under a plan governed by ERISA: (1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary and capricious where the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where the plan grants the administrator discretion but the administrator operates under a conflict of interest. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Williams v. BellSouth Telecomms., Inc.,* 373 F.3d 1132, 1134 (11th Cir.2004).

█ Here, it is undisputed that the Plan grants the Committee discretion in making eligibility determinations. (Coca–Cola Defs.' Br. in Supp. of Mot. for Summ. J. at 12–13.) It is also undisputed that Plan benefits were paid from a trust which Coca–Cola funded through irrevocable, periodic contributions. (*Id.* at 13–14.) The Eleventh Circuit held that this type of plan structure "eradicates any alleged conflict of interest" and is entitled to arbitrary and capricious review. *Turner v. Delta Family–Care Disability & Survivorship Plan,* 291 F.3d 1270, 1273–74 (11th Cir.2002).

*Herzog,* 193 F.3d at 1246.

The traditional "arbitrary and capricious" standard of review applies here.

Plaintiff alleges that the Court should review the Coca–Cola Defendants' decision using the *de novo* standard. (Pl.'s Resp. in Opp'n to Coca–Cola Defs.' Mot. for Summ. J. at 19.) She argues that *de novo* review is appropriate "because Defendants abused their ERISA fiduciary obligations and actions by an abusive fiduciary deserve no deference...." (*Id.*)[8] To support this argument, she cites *Pralutsky v. Metropolitan Life Insurance Co.*, 316 F.Supp.2d 840 (D.Minn.2004), a Minnesota district court opinion in which the court held that the plaintiff had shown "egregious" procedural irregularities in the claims process and that the administrator's decision would therefore be reviewed using the Eighth Circuit's "sliding scale" of deference. 316 F.Supp.2d at 850–52 (citing *Woo v. Deluxe Corp.*, 144 F.3d 1157 (8th Cir.1998)).

A close reading of *Pralutsky* discloses it does not apply here, where there is no showing of egregious procedural abuses, and Plaintiff does not cite, nor is the Court aware of, any Eleventh Circuit authority supporting her argument. In *Torres v. Pittston Co.*, 346 F.3d 1324 (11th Cir.2003), the Court of Appeals for the Eleventh Circuit declined to address whether an administrator's failure to comply with the procedural deadlines outlined in ERISA's implementing regulations transformed its decisions into a "deemed denial" to be reviewed *de novo*. 346 F.3d at 1332–34.

Although *Torres* leaves open the possibility that an administrator's failure to comply with the procedural deadlines set out in the regulations may alter the otherwise-applicable standard of review, critical to the *Torres* court's discussion was the fact that the regulation at issue expressly stated that the administrator's failure to comply with a deadline resulted in the claim being "deemed denied." *Id.* at 1332 ("The operative ERISA regulations pertaining to this case, the former 29 C.F.R. § 2560.503–1(e)(2), provided that, if an ERISA plan administrator did not act on a claim for benefits within the allotted time—at that time, 90 days from the date of receipt of the claim, with some possibility for extensions—'the claim shall be deemed denied and the claimant shall be permitted to proceed to the review stage.' "); *see also Hamall–Desai v. Fortis Benefits Ins. Co.*, 370 F.Supp.2d 1283, 1291–92 (N.D.Ga.2004) (citing *Torres* for the proposition that "[w]hen an application for benefits is not determined within the time allotted by ERISA or the policy, this constitutes a "deemed denial," which may call for *de novo* review because it may be viewed as a decision for which the administrator exercised no discretion").

The procedural irregularities alleged by Plaintiff fail to support a "deemed denial." Plaintiff cites the Coca–Cola Defendants' alleged failure to ensure that the medical personnel reviewing her claim for benefits had appropriate training and experience in

---

**8.** This argument is circular. Plaintiff alleges that the Coca–Cola Defendants breached their duties under ERISA in denying her claim and that, on the basis of this allegation, the Court's determination of whether there was a breach of their duties should be determined applying a *de novo* review standard. Plaintiff's argument, if accepted, effectively would require *de novo* review of every benefits determination, since rarely will there be an ERISA action for the recovery of benefits where the plaintiff does not allege some pro-

cedural deficiency tied directly to the benefits determination under review, for instance, that the defendant administrator "ignored" medical evidence submitted by the plaintiff. This result is illogical and inconsistent with the tiered review standard which applies in this Circuit. It would be unjustified here for the further reason that the Court finds the Coca–Cola Defendants' processing and review was proper and that their denial of long-term benefits was appropriate.

the relevant medical field (29 C.F.R. § 2560.503–1(h)(3)(iii)), and their alleged failure to provide Plaintiff with certain Plan documents upon request (29 C.F.R. § 2560.503–1(h)(2)(iii)).[9] Neither of these regulations expressly provides that a failure to comply with them results in a claim being deemed denied, nor do they otherwise indicate that such a failure affects the standard of review to be applied to the administrator's decision.[10] Thus, to the extent Plaintiff can demonstrate the Coca–Cola Defendants failed to comply with these regulations in denying her claim, these alleged violations are relevant to evaluating whether their decision was arbitrary and capricious, but they do not affect the standard of review to be used by the Court.[11]

## C. The Coca–Cola Defendants' Motion for Summary Judgment

### 1. Plaintiff's Claim for Wrongful Denial of Benefits

The Court's arbitrary and capricious review has two steps. First, it must determine whether, under the de novo standard of review, Defendant's benefits denial decision is "wrong," (i.e., the court disagrees with the administrator's decision). Williams, 373 F.3d at 1138. If not, then the court's inquiry ends and the decision is

affirmed. Id. If the administrator's decision is de-novo wrong, then the court proceeds to the second step and evaluates whether reasonable grounds supported the decision (hence, review the administrator's decision under the more deferential arbitrary and capricious standard). Id. If the decision is supported by reasonable grounds, then the court's inquiry ends and the decision is affirmed. Id. If not, the decision is reversed. Id.

### a. De Novo Review

 The Court first considers whether the Coca–Cola Defendants' decision to deny Plaintiff's claim was "wrong." See HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co., 240 F.3d 982, 994 n. 23 (11th Cir.2001). " 'Wrong' is the label used by [the Eleventh Circuit] to describe the conclusion a court reaches when, after reviewing the plan documents and disputed terms de novo, the court disagrees with the claims administrator's plan interpretation." Id. Having reviewed the administrative record, as well as the parties' arguments on summary judgment, and viewing the facts in the light most favorable to Plaintiff, the Court does not find that the Coca–Cola Defendants' decision to deny benefits was de-novo wrong.

9. The regulations cited by Plaintiff do not apply here. Plaintiff's claim for benefits was submitted in 2001. The regulations cited by Plaintiff did not become effective until January 1, 2002. See 29 C.F.R. § 2560.503–1(o). Accordingly, the Court applies the regulations in effect in 2001.

10. Although the applicable version of the regulations contained a requirement that plan administrators permit a claimant an opportunity to "[r]eview pertinent documents," the regulation does not provide that a failure to do so will result in a claim being deemed denied. See 29 C.F.R. § 2560.503–1(g)(ii) (2000).

11. As a practical matter, this issue is moot because the "arbitrary and capricious" review

process articulated in Williams requires the Court to conduct a de novo review of the administrator's decision as the first step in the arbitrary and capricious review. Plaintiff's argument concerning a less deferential standard of review is relevant only if the Court determines the Coca–Cola Defendants' decision was de-novo wrong, but nevertheless upholds the decision as reasonable under the second step of the arbitrary and capricious review. Furthermore, it appears that before the Eleventh Circuit will depart from its well-established tiered review standards, a litigant will have to show a violation of a clear procedural obligation, the consequence of which was clearly forecasted.

To demonstrate she has a "Disability" under the Plan, the claimant must show she (1) suffers from "a physical or mental illness or injury," (2) which continuously disables her from performing the normal duties of her job, and (3) she is not engaged in any other occupation or employment for wage or profit. (Record at 310.) The first and third of these requirements are not at issue here—it is undisputed that Plaintiff suffers from CFS and that she did not engage in any other occupation or employment during the relevant period. The basis for the Coca–Cola Defendants' decision to deny her claim for benefits, and the underpinning of their motion for summary judgment, is that she failed to satisfy the second requirement because she did not offer sufficient evidence that her CFS disables her from performing the normal duties of her job. As the Committee explained in its April 19, 2002 letter, "[t]he objective medical reports and data [submitted by Plaintiff] do not support a degree of functional impairment that would substantiate that [Plaintiff] is unable to perform her job as a Systems Support Specialist, which is sedentary." (Record at 2.) Having reviewed the medical records submitted by Plaintiff, particularly the Attending Physician's Statement, Estimated Physical Abilities form and correspondence submitted by Dr. Soules, the Court similarly concludes these records did not provide sufficient objective data or analysis to substantiate Plaintiff's claim that the symptoms of her CFS were of such intensity, frequency or duration that they rendered her unable to perform the normal duties of her Support Specialist V position.

This case is substantially similar to *Boardman v. Prudential Insurance Company of America*, 337 F.3d 9 (1st Cir. 2003). In *Boardman*, the plaintiff sought disability benefits under a plan requiring her to show "that she is sick or injured *and* ... that due to this illness or injury she is unable to perform the material and

substantial duties of her own, or any other occupation for which she is reasonably suited." 337 F.3d at 16. The first of these two requirements was not contested-"[the plaintiff] presented ample evidence, in the form of doctors' evaluations, Attending Physician Statements, and other medical records, documenting her [fibromyalgia and CFS]." *Id.* The administrator denied the plaintiff's claim for benefits, however, based on its determination that the medical records submitted by the plaintiff failed to establish that the symptoms of these illnesses prevented her from performing the duties of her own or any other similar occupation. *Id.* Specifically, the administrator concluded that "[n]one of the specialists that have treated [the plaintiff] in the past two years have indicated any limitations or restrictions, *based on objective findings*, that would preclude [the plaintiff] from performing any occupation for which she is suited." *Id.* (emphasis added). The district court upheld the administrator's denial of benefits, and the First Circuit affirmed this decision on appeal:

Throughout the appeals process, [the administrator] advised [the plaintiff] of her failure to show how her illness rendered her unable to work, and informed her of her right to submit additional evidence and documentation that she wished to have considered. Repeatedly, [the plaintiff's] submissions on appeal consisted primarily of arguments based on existing documentation, with scant attention to her burden of showing that, due to her illness, she was unable to perform the duties of her own or any other similar occupation. Given (1) the absence of adequate evidence in [the plaintiff's] medical records indicating that [her] condition imposed limitations on her ability to perform the material and substantial duties of her own occupation or any other occupation for which she is suited, and (2) the evidence to the

contrary provided in [an independent medical examination performed by the administrator's medical personnel], [the administrator's] determination that [the plaintiff] failed to meet the definition of Total Disability was not arbitrary or capricious.

337 F.3d at 17.

In this case, Plaintiff similarly was advised that she had failed to demonstrate by objective evidence that her CFS rendered her unable to perform the normal duties of her position. (Record at 167, 222.) She also was informed of her right to submit additional evidence and documentation to be considered by the claims administrator and the Coca–Cola Defendants, after both the initial denial and the denial of her first appeal. (*Id.* at 167, 222–23.) Plaintiff was even advised of the specific tests or procedures which would provide the objective evidence necessary to substantiate her claim for benefits. (*Id.*) Notwithstanding this advice, Plaintiff chose to rely on the medical records she submitted with her initial claim—records which she had previously been informed were not sufficient to show she was enti-

tled to benefits under the Plan. Given these facts, the Court cannot conclude that the Coca–Cola Defendants' decision to deny her benefits was wrong. *See Boardman*, 337 F.3d at 17.[12] *Cf. Karvelis v. Reliance Standard Life Ins. Co.*, No. Civ. A. H–3–3848, 2005 WL 1801943, at *18–19 (S.D.Tex. July 28, 2005) (holding that the plaintiff's treating physician's subjective description of her conditions, symptoms and sensations associated with CFS was not persuasive evidence of disability where unaccompanied by records showing the physician "administered objective tests of physical strength or stamina, or objective tests of memory and ability to concentrate," but concluding administrator's denial of benefits was arbitrary and capricious because it failed to address the plaintiff's alleged inability to perform mental and cognitive demands of her occupation); *Seger v. ReliaStar Life*, No. 3:04–cv–16/RV/MD, 2005 WL 2249905, at *18 (N.D.Fla. Sept.14, 2005) (holding the administrator's denial of benefits was not "wrong" or arbitrary and capricious where medical records relied on by plaintiff failed to indicate the physical limitations related to her ill-

12. Plaintiff argues *Boardman* does not support the Coca–Cola Defendants' argument because, in addition to the absence of evidence of impairment in the medical records submitted by the plaintiff, the administrator in *Boardman* relied on the results of an independent medical examination. 337 F.3d at 17. The Court disagrees. An independent medical examination is not required in all cases, especially where the claimant initially has failed to offer sufficient evidence in support of her claim. Imposing such a requirement is inconsistent with ERISA, which places the burden on the claimant to demonstrate she is entitled to benefits under the plan, not on the administrator to demonstrate that the claimant is not disabled. *See Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir.1998) ("A plaintiff suing under [Section 1132(a)(1)(B)] bears the burden of proving his entitlement to contractual benefits."). The Court further observes that in the majori-

ty of cases where the court appears to rely on an independent medical examination to contradict the claimant's evidence of disability, the benefits decision under review was a termination of benefits to a claimant previously determined to be totally disabled under the relevant benefit plan. *See, e.g., Boardman*, 337 F.3d at 11 ("[The plaintiff] had been receiving benefits under the Plan for more than six years when [the defendant] terminated her benefits on the ground that she no longer met the plan's definition of 'total disability.' "). It is not surprising that a court in those circumstances would look for an independent medical examination to explain the administrator's reversal of its previous position that the plaintiff was entitled to benefits. Here, the Coca–Cola Defendants did not terminate previously awarded long-term disability benefits. They denied Plaintiff's initial claim.

ness that prevented the plaintiff from working).

Plaintiff argues that the Coca–Cola Defendants' "objective evidence" requirement was improper. (Pl.'s Resp. in Opp'n to Coca–Cola Defs.' Mot. for Summ. J. at 8 n. 9.) The cases cited by Plaintiff hold that requiring objective evidence of an illness such as CFS, which does not admit to diagnosis by objective findings, is unreasonable. *See, e.g., Maronde v. Sumco USA Group Long–Term Disability Plan,* 322 F.Supp.2d 1132, 1140–41 (D.Or.2004). These cases do not apply here, where the Coca–Cola Defendants required objective evidence of the limitations placed on Plaintiff's physical abilities due to her CFS and its symptoms, not objective evidence of the illness itself. This distinction was summarized by the district court in *Karvelis*:

> A few guiding principles are evident from the case law. If the denial of [a plaintiff's] claim is based on the lack of objective medical evidence of disease, which a claimant with CFS would typically be unable to provide, it would run afoul of the courts' recognition that it is arbitrary and capricious for a plan to require objective evidence of the etiology of CFS, when it is widely recognized that there is no conclusive laboratory test for CFS. If the denial of [a plaintiff's] claim is based on the lack of substantial objective medical evidence of symptoms or their affect on her ability to work, ... that would be consistent with opinions upholding insurers' denials of long-term disability benefits.

2005 WL 1801943, at *15; *see also Boardman,* 337 F.3d at 17 n. 5 ("[The administrator] did not require [the plaintiff] to present objective medical evidence to establish her illnesses.... Rather, [it] wanted objective evidence that these illnesses rendered her unable to work. While the diagnoses of [CFS] and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis.").

The requirement that a plaintiff submit objective evidence of the impact of a diagnosed disease, illness or other condition is logical and necessary, especially in the case of diagnoses such as CFS. The objective-evidence requirement promotes integrity in the application of the law. It assures claimants are treated fairly and with parity by providing that coverage decisions are not based on varying subjective expressions by claimants of a disease, illness or condition with which they have been diagnosed. That is, it requires claimants to establish that the diagnosed disease, illness or condition results in an actual disability, not just a perceived one. The requirement of objective evidence also promotes integrity by assuring there is corroboration for a claimant's subjective complaints, thus deterring embellished allegations of the effect of the diagnosed malady as well as deterring fraud in the claims process. Accordingly, the Court finds the Coca–Cola Defendants appropriately required Plaintiff to provide objective evidence of the effects of her CFS and thus properly construed the medical certification requirement of the Plan in denying Plaintiff's claim.[13]

**13.** Plaintiff also asserts a number of other arguments, each of which is unavailing. First, Plaintiff contends there remain genuine issues of material fact in dispute, citing the slightly different iterations of the Plan's definition of "Disability" used by NATLSCO and the Coca–Cola Defendants, and the parties' allegedly competing characterizations of the material duties of her position. (Pl.'s Resp. in Opp'n to Coca–Cola Defs.' Mot. for Summ. J. at 2–5.) The Court finds that the definitions of "Disability" articulated by NATLSCO and the Coca–Cola Defendants are consistent and that they accurately reflect the Plan language. In addition, the Court finds that the parties' respective descriptions of the material duties of her Support Specialist V position are not inconsistent, but merely incomplete. The de-

b. *Reasonableness of the Coca–Cola Defendants' Decision*

■ Even if the Coca–Cola Defendants' decision to deny benefits was *de-novo* wrong, summary judgment is warranted because their decision was not arbitrary and capricious. "In determining whether the denial of the [plan participant's] claims was arbitrary and capricious, 'the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made.'" *Dyce v. Salaried Employees' Pension Plan of Allied Corp.*, 15 F.3d 163, 166 (11th Cir.1994) (citing *Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137, 1139 (11th Cir.1989)); *Cagle v. Bruner*, 112 F.3d 1510, 1518 (11th Cir.1997) ("Under the arbitrary and capricious standard of review, [the court is] limited to deciding whether the [plan administrator's] interpretation of the plan was made rationally and in good faith."). "It is irrelevant that the court or anyone else might reach a different conclusion." *Turner*, 291 F.3d at 1274. This standard of review, which the Eleventh Circuit has characterized as "substantively the same as the 'abuse of discretion' standard," is designed to "avoid judicial second guessing/intrusion by according the most judicial deference (and thus, the least judi-

cial scrutiny)" to benefits determinations. *Williams*, 373 F.3d at 1137. It applies to both the plan administrator's interpretation of plan terms and its factual determinations. *Torres*, 346 F.3d at 1329.

■ As discussed above, Plaintiff was advised throughout the claims process that she was required to submit objective clinical findings to support her alleged physical limitations and their impact on her ability to perform the normal duties of her job. She failed to do so. Instead, like the plaintiff in *Boardman*, her submissions on appeal "consisted primarily of arguments based on existing documentation, with scant attention to her burden of showing that, due to her illness, she was unable to perform the duties of her own or any other similar occupation." *Boardman*, 337 F.3d at 17. Given these facts, the Court concludes the Coca–Cola Defendants' decision to deny benefits was made rationally and in good faith. Accordingly, the Coca–Cola Defendants' motion for summary judgment on this claim is GRANTED.

c. *Plaintiff's Supplemental Authority*

On September 29, 2005, Plaintiff filed her Motion and Memorandum of Law for Leave to Supplement Her Summary Judgment Pleadings, requesting that the Court consider an opinion recently issued by the

---

scription used by the Court is based on the administrative record description cited by both parties. Finally, Plaintiff argues that NATLSCO's denials of her initial claim and first appeal failed to provide her sufficient notice of the "objective evidence" requirement. This is not so. In its July 9, 2001 letter denying her claim, NATLSCO advised Plaintiff that it had concluded, based on its review of the medical evidence she submitted, that "[e]ven assuming a [diagnosis of CFS], there is no documentation of objective clinical findings to support the physical limitations on [Dr. Soules'] Estimated Physical Abilities Form and Attending Physician's Statement. Specifically, there is no documentation of objective muscle weakness, sensory exam abnor-

malities, decreased range of motion, synovitis, or any joint abnormalities." (Record at 222.) In its December 7, 2001 letter affirming its initial denial, NATLSCO again notified Plaintiff that "[b]ased on a thorough review of all documentation provided, there are insufficient objective clinical findings (i.e. detailed musculoskeletal exam findings, functional capacity evaluation, etc.) to support significant impairments in functioning that would prevent [her] from performing the normal duties of [her] occupation as a Systems Support Specialist V." (*Id.* at 167.) These statements provided Plaintiff with more than sufficient notice of her need to support her claim with objective evidence of impairment.

Honorable Beverly B. Martin in *Burt v. Metropolitan Life Insurance Co.*, 1:04–CV–2376–BBM (N.D.Ga. Sept. 16, 2005)[64]. Plaintiff's motion is GRANTED. Having considered the *Burt* opinion and the authorities cited therein, the Court finds that it does not alter the result reached by the Court here.

First, *Durr v. Metropolitan Life Insurance Co.*, 15 F.Supp.2d 205 (D.Conn.1998), the decision relied on by the *Burt* court in concluding that the administrator's objective-evidence requirement was *de novo* wrong, is distinguished from this case. In *Durr*, the defendant argued it properly denied the plaintiff benefits because he failed to submit objective evidence substantiating his doctor's assessment that he was precluded from working because the physical and mental stress from continued employment would likely trigger the rupture of existing aneurysms and the formation of more aneurysms, possibly resulting in death. 15 F.Supp.2d at 211–12. The defendant alleged the plaintiff was required to submit "published studies, articles, or texts" to establish (a) that his job would cause him physical and mental stress; and (b) that this alleged stress would result in aneurysm rupture or formation. *Id.* at 212. The *Durr* court appropriately found this conduct arbitrary and capricious: "[I]t was unreasonable for defendant to interpret the [plan] as requiring plaintiff or plaintiff's treating physicians to provide [defendant] with published studies, articles, or texts showing a connection between stress and plaintiff's condition." *Id.* The court also relied on the fact that the defendant's objective-evidence requirement appeared to be an after-the-fact justification: the defendant did not request "objective evidence" from plaintiff or his treating physicians during the claims process. *Id.* at 212–13.

Here, the Coca–Cola Defendants' objective-evidence requirement did not relate to fuzzy issues of causation (as in *Durr*) or the etiology of conditions such as CFS, fibromyalgia, etc.—conditions which do not admit readily to objective measurement or quantification. Instead, Plaintiff was asked to provide objective evidence of the effect of her CFS symptoms on her ability to perform the normal duties of her job by, for instance, undergoing a functional capacity evaluation to determine Plaintiff's tolerance for standing, sitting, or walking. Unlike the plaintiff in *Durr*, Plaintiff here was repeatedly advised during the claims process that she was required to submit objective evidence of the effect of CFS to support her claim, even providing specific examples of the type of objective evidence that would be considered and how to obtain it. (*See* Record at 167, 222.) Under these circumstances, the Court concludes *Durr*, and by extension, *Burt*, and their reasoning do not apply here.

In addition, even if the reasoning used and conclusions reached by the court in *Burt* was adopted and applied here, the result would be the same. In *Burt*, the court concluded that the defendant's objective-evidence requirement constituted a "*de novo* wrong but reasonable" interpretation of the plan. (*Id.* at 28) ("While this court is unwilling to read an objective evidence requirement into a contract not containing one, this court nonetheless understands that without such a requirement, benefits might be paid out to participant[s] with subjective and effervescent symptomology simply because the symptoms were first passed through the intermediate step of self-reporting to a medical professional.") (citations omitted). Under the applicable standard of review in *Burt*—the heightened arbitrary and capricious standard—this conclusion advanced the court to the third step in its analysis, the burden-shifting framework specified in *Brown v. Blue Cross & Blue Shield, Inc.*, 898 F.2d 1556, 1568 (11th Cir.1990). Under the

standard of review applicable in this case—the traditional arbitrary and capricious standard—this same "*de novo* wrong but reasonable" conclusion ends the Court's inquiry and requires that the Coca–Cola Defendants' decision to deny benefits be affirmed. *See Williams*, 373 F.3d at 1138. Indeed, the Court has concluded that, even assuming the Coca–Cola Defendants' denial of Plaintiff's claim was *de-novo* wrong, it was reasonable and, under the arbitrary and capricious standard, must be affirmed. *See* Section II(C)(1)(b), *supra*.

### 2. Plaintiff's Claim for Interference With Plan Benefits

Plaintiff asserts a claim against the Coca–Cola Defendants for intentional interference with Plan benefits under 29 U.S.C. § 1140. (Compl.¶¶ 66–71.) She alleges the Coca–Cola Defendants changed her employment status to foreclose her right to benefits under the Plan, as well as other employee benefit plans provided by the Coca–Cola Defendants. (*Id.*) The Coca–Cola Defendants move for summary judgment on this claim, arguing that she cannot establish a *prima facie* case of discrimination under Section 1140. (Coca–Cola Defs.' Br. in Supp. of Mot. for Summ. J. at 26–28.) In her response, Plaintiff voluntarily dismisses her Section 1140 claim and requests that the Court dismiss this claim without prejudice. (Pl.'s Resp. in Opp'n to Coca–Cola Defs.' Mot. for Summ. J. at 20.) The Coca–Cola Defendants do not oppose this request. (*See* Coca–Cola Defs.' Reply Br. in Supp. of Mot. for Summ. J. at 2 n. 1.)

Rule 41 of the Federal Rules of Civil Procedure provides that, once an adverse party files its answer to the complaint, a party may not voluntarily dismiss an action "save upon order of the court and upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a). In view of the Coca–Cola Defendants' con-

sent, Plaintiff's request is granted and her Section 1140 claim is DISMISSED WITHOUT PREJUDICE.

### 3. Plaintiff's Claim for Failure to Provide Plan Documents

Plaintiff alleges the Coca–Cola Defendants failed to provide her with certain documents which she claims were Plan documents required to be provided under ERISA. (Compl.¶¶ 72–90.) Section 1024 of ERISA states that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Section 1132(c) provides the enforcement mechanism for this requirement:

> Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c).

■ The Coca–Cola Defendants move for summary judgment on this claim, arguing that Plaintiff submitted two requests for Plan documents under Section 1024— one on August 9, 2001, and the other on March 17, 2003—and that they complied with both of these requests within the 30–

day period prescribed by Section 1132(c). (Coca–Cola Defs.' Br. in Supp. of Mot. for Summ. J. at 28–30.) In support of their argument, the Coca–Cola Defendants rely on the correspondence between the parties in the administrative record. This correspondence is as follows:

- On August 9, 2001, Plaintiff's previous counsel, Heather Karrh ("Karrh"), requested "[a] copy of the summary plan description and/or the policy of insurance, along with excerpts from your claims manual or other written criteria that you utilized in your evaluation and denial of this claim", as well as a complete copy of Plaintiff's claims file "including all medical (psychological and physical) records, evaluations and reports." (Record at 77.)
- On September 4, 2001, NATLSCO, on behalf of ReliaStar and Coca–Cola, responded to this request by providing "a copy of the Long Term Disability Income Plan and a copy of [Plaintiff's] claim file." (*Id.* at 82.)
- On September 5, 2001, apparently prior to her receipt of NATLSCO's September 4, 2001 correspondence, Karrh notified NATLSCO that she had not yet received Plaintiff's claims file, but also indicated that NATLSCO's representative had assured her the claims file had been sent. (*Id.* at 83.) Karrh did not mention any Plan documents. (*Id.*)
- On January 30, 2002, Karrh complained that it had not received the curriculum vitae and medical reports of certain physicians. (*Id.* at 288.)
- On February 11, 2002, Karrh acknowledged that the claims file was complete. (*Id.* at 298) ("Thank you so much for your completion of [Plaintiff's] claims file.").
- On March 17, 2003, Plaintiff's new counsel, Paulette Adams–Badham ("Adams–Badham"), requested "all pertinent and 'relevant' documents, records and other information relevant to the claim for benefits under the plan," and listed specific information and documents associated with Plaintiff's claims file. (*Id.* at 446–47.) She also requested that "in accordance with 29 C.F.R. [sic] § 1024, we request that the plan administrator provide a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract or other instruments under which the plan is established or operated including a copy of the plan and any amendments to the plan, any claim serving agreements, any administrative services agreements, and any contracts for coverage or administration between any claims administrator, plan administrator and employer." (*Id.* at 447.) Adams–Badham further requested copies of all such documents as they existed at the time Plaintiff was first employed by Coca–Cola, through the present. (*Id.*)
- On April 17, 2003, counsel for Coca–Cola responded to Adams–Badham's March 17, 2003 letter, stating that "documents required to be disclosed under the claim regulations applicable to [Plaintiff's] claim and pursuant to 29 U.S.C. § 1024 are enclosed, including the claim file for [Plaintiff's] Disability Claim, the Plan document, the Summary Plan Description for the Plan and Summary of Material Modifications related to the plan." (*Id.* at 451.) Counsel for Coca–Cola's letter further advised Plaintiff's counsel that "[i]f you seek additional documents besides the plan documents, please describe them with more specificity, and we will respond to your written request." (*Id.*)

This evidence demonstrates the Coca–Cola Defendants complied with Plaintiff's requests for Plan documents under Section 1024 within the time prescribed by Section

1132(c). Accordingly, the Coca–Cola Defendants have sustained their burden as the movant on summary judgment to establish that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). To avoid summary judgment, Plaintiff must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. She has failed to do so.

Plaintiff's response to Defendant's motion for summary judgment on this claim is extremely limited. Her argument, in its entirety, is as follows:

> [Plaintiff] requested documents relevant to her LTD Claim on several occasions-August 9, 2001; January 30, 2001; and March 17, 2003. [Section 1132(c)] imposes statutory penalties for failing or refusing to comply with [Plaintiff's] requests. [The Coca–Cola Defendants] either failed or refused to provide [Plaintiff] with documents relevant to her LTD Claim (e.g. claims manuals, claims guidelines, CV's, medical record reviews, etc.), and therefore, the Court should impose statutory penalties against the Coca–Cola Defendants, denying the Coca–Cola MSJ on this issue.

(Pl.'s Resp. in Opp'n to Coca–Cola Defs.' Mot. for Summ. J. at 18–19) (internal citations omitted). This argument is insufficient to avoid summary judgment.

First, Plaintiff's conclusory statement that the Coca–Cola Defendants failed or refused to provide relevant documents is without any foundation. To support this statement, Plaintiff's response refers the Court to pages 10–11 of her memorandum of law in support of her motion for summary judgment, as well as a footnote in the memorandum. (*Id.*) The only relevant argument or evidence in the cited portions of her memorandum is Plaintiff's assertion that "Defendants failed to provide [Plaintiff] with additional documents [she] requested (e.g., claims handling manuals or procedural guidelines)." [14] (Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. at 10.) To support this assertion, Plaintiff cites Paragraph 17 of her Statement of Material Facts, which states, without record citation, that "Despite [Plaintiff's] multiple requests for all documents relevant to [her] LTD Claim, Defendants failed to provide [her] with relevant claims manuals and procedural guidelines for handling her LTD claim." (Pl.'s Statement of Material Facts ¶ 17.) In summary, Plaintiff's conclusory argument in opposition to Defendant's motion for summary judgment is supported only by her conclusory argument in support of her motion for summary judgment, which in turn is supported only by a single sentence in her statement of material facts, which is unsupported. These linked conclusory statements are not persuasive.

Second, Plaintiff's argument fails to distinguish between Plan documents required to be provided under Section 1024, such as the Plan itself and the Summary Plan Description, and the much broader category of documents "relevant" to her benefits claim. (*See* Pl.'s Resp. in Opp'n to Coca–Cola Defs.' Mot. for Summ. J. at 18–19.) Plaintiff implies that the Coca–Cola Defendants failed to provide her with documents concerning the qualifications of certain medical reviewers employed by NATLSCO, as well as other unspecified documents relevant to her claim for benefits,

---

**14.** The memorandum footnote cited by Plaintiff merely repeats her conclusory assertion that "Defendants failed to provide relevant information and documents" and cites the administrative record correspondence summarized above. As the Court has already concluded, this record evidence does not show that the Coca–Cola Defendants failed to provide Plan documents in response to a request by Plaintiff.

within the time prescribed by Section 1132(c). (*Id.*) Even if this were true-a conclusion for which Plaintiff does not provide any support-such a failure would not be actionable under Section 1132(c).

Section 1132(c), by its plain language, addresses only an administrator's failure or refusal to provide information "which [the] administrator is required by this subchapter to furnish to a participant or beneficiary." 29 U.S.C. § 1132(c). The section's phrase "under this subchapter" (*i.e.,* ERISA) clearly embraces an administrator's failure or refusal to provide the documents identified in Section 1024, namely "the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." *See* 29 U.S.C. § 1024(b)(4). The source of the Coca–Cola Defendants' obligation to provide Plaintiff copies of documents "relevant" or "pertinent" to her claim is outside the statute. To the extent claims-related documents are required to be provided, the obligation arises by federal regulation. *See* 29 C.F.R. § 2560.503–1(g) (2000). This regulation does not provide for strict liability for violation of the regulation and does not impose a per-diem fine. *See id.* ("Every plan shall establish and maintain a procedure by which a claimant ... has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary ... and under which a full and fair review of the claim and its

denial may be obtained. Every such procedure shall include but not be limited to provisions that a claimant or his duly authorized representative may ... [r]eview pertinent documents...."); 29 C.F.R. § 2560.503–1(h)(iii) (requiring administrators to provide to claimants, upon request, "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits").[15]

Plaintiff does not cite, nor is the Court aware of, any decision from the Eleventh Circuit Court of Appeals addressing whether a failure to provide documents "pertinent" or "relevant" to a claim for benefits under 29 C.F.R. § 2560.503–1(g) or its current equivalent constitutes a failure to provide information "required by this subchapter" under Section 1132(c).[16] The First Circuit has characterized such a broad reading of Section 1132(c) as, at most, "debatable." *Doe v. Travelers Ins. Co.,* 167 F.3d 53, 60 (1st Cir.1999). In *Doe,* the district court assessed penalties under Section 1132(c) against an administrator for failure to provide its mental health guidelines to the claimant, concluding that the guidelines constituted a "pertinent" document needed for "full and fair review" under 29 C.F.R. § 2560.503–1(g). *Id.* The First Circuit reversed, finding that, even assuming a failure to provide documents under the regulation was actionable under Section 1132(c), the claimant's request for documents could not rea-

---

**15.** As discussed in Footnote 9, *supra,* the current version of this regulation does not apply to Plaintiff's claim.

**16.** *But see Hamall–Desai v. Fortis Benefits Ins. Co.,* 370 F.Supp.2d 1283, 1311–15 (N.D.Ga.2004) (assessing statutory penalties under Section 1132(c) against an administrator for failure to provide the claimant with certain medical reviewers' opinions and its training and procedural materials, citing these failures as violations of 29 C.F.R.

§ 2560.503–1(g) (2000)). The court in *Hamall–Desai* did not expressly address whether a failure to provide "pertinent" documents under ERISA's implementing regulations constituted a failure to provide information "required by this subchapter" authorizing an award under Section 1132(c). It appears to have relied on the fact that the 29 C.F.R. § 2560.503–1(g) (2000), the regulation in question, "was promulgated by the Secretary of Labor pursuant to 29 U.S.C. § 1132." *Hamall–Desai,* 370 F.Supp.2d at 1313 n. 34.

sonably be construed as a request for the administrator's guidelines. *Id.* Although the court was not required to address the precise issue raised by the Court here, (*id.* ("We pass by the question whether ERISA's $100 penalty provision applies to material required solely because of an ERISA regulation")), it indicated that the district court's broad reading of Section 1132(c) is not supported by that section's plain language: "[S]ection 1132(c)(1) speaks of information required 'by' the statute...." *Id.* In the absence of Eleventh Circuit authority on this issue, the Court declines to rewrite Section 1132(c) to authorize statutory penalties against an administrator for failure to provide documents other than those identified in the statute itself.[17][18]

Because the Coca–Cola Defendants have sustained their burden under Rule 56, and Plaintiff has failed to come forward with specific facts showing that there is a genuine issue for trial, summary judgment on this claim appropriate and the Coca–Cola Defendants' motion for summary judgment on this claim is GRANTED.

### 4. *Plaintiff's Claim for Attorneys' Fees and Costs*

Section 1132(g) authorizes the Court, in its discretion, to award reasonable attorneys' fees and costs in an ERISA action. 29 U.S.C. § 1132(g)(1). Having determined that summary judgment is warranted on Plaintiff's other claims, the Court finds that summary judgment also is war-

ranted on her claim for attorneys' fees and costs. Accordingly, the Coca–Cola Defendants' motion for summary judgment on this claim is GRANTED.

### D. The ReliaStar Defendants' Motion for Summary Judgment

#### 1. *Plaintiff's Claim for Wrongful Denial of Benefits*

Plaintiff asserts her claim for wrongful denial of benefits under Section 1132(a)(1)(B) also against the ReliaStar Defendants. Summary judgment is warranted on this claim because, as set forth in Section II(C)(1), *supra*, the denial of Plaintiff's request for benefits was not *de novo* wrong or unreasonable under an arbitrary and capricious standard of review.

■■■ Summary judgment also is warranted because the ReliaStar Defendants are not proper defendants with respect to this claim. "[T]he relief provided in an action to recover benefits under ERISA is equitable, not legal[;] ... the relief consists of an order directing a person or entity having the necessary authority under the benefit plan to pay the participant the benefit that he seeks." *Hunt v. Hawthorne Assocs.*, 119 F.3d 888, 906–07 (11th Cir.1997). Thus, unless an entity has the authority under the plan to effect payment, it cannot provide the relief sought under Section 1132(a)(1)(B), and is not a proper defendant. *See id.* at 908 ("[T]he case law of this circuit demonstrates that

---

17. Of course, had Congress intended for Section 1132(c) to apply in the broad manner proposed by Plaintiff, it could have easily manifested this intent in the statute by providing for liability for any administrator "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter [*or the Department of Labor's implementing regulations*] to furnish to a participant or beneficiary...." *Compare* 29 U.S.C. § 1132(c).

18. This does not mean that an administrator's failure to provide "pertinent" or "relevant" documents under the regulations is without consequence. As the First Circuit observed in *Doe,* an administrator's failure to provide such information may result in a determination that it did not accord the claimant a "full and fair review," and that its denial of the plaintiff's claim was therefore arbitrary and capricious. *Doe,* 167 F.3d at 60–61 (noting also that the regulations can be independently enforced by the Secretary of Labor).

an order enjoining the payment of benefits from an ERISA plan must issue against a party capable of providing the relief requested."). Here, it is undisputed that the ReliaStar Defendants have not performed any services on behalf of Coca–Cola, the Committee or the Plan since December 31, 2002, and that they do not have any authority to effect payment under the Plan. Because the ReliaStar Defendants cannot provide the relief Plaintiff seeks under Section 1132(a)(1)(B), under *Hunt* and its progeny, they are not a proper defendant in this case. Accordingly, their motion for summary judgment on this claim is GRANTED.

### 2. *Plaintiff's Claim for Failure to Provide Documents*

An action for failure to provide benefit plan documents pursuant to Section 1132(c) must be brought against the plan administrator. *See* 29 U.S.C. § 1132(c); *Adair v. Johnston,* 221 F.R.D. 573, 580–81 (M.D.Ala.2004). Here, the Plan expressly designates the Committee as the Plan Administrator. Plaintiff argues the ReliaStar Defendants may be subject to liability under Section 1132(c), however, because they acted as *de facto* plan administrators. Even if true, summary judgment still is warranted on this claim because, as discussed in Section II(C)(3), *supra,* Plaintiff has failed to come forward with specific facts showing that there is a genuine issue for trial with respect to this claim. Accordingly, the ReliaStar Defendants' motion for summary judgment on this claim is GRANTED.

### 3. *Plaintiff's Claim for Attorneys' Fees and Costs*

Section 1132(g) authorizes the Court, in its discretion, to award reasonable attorneys' fees and costs in an ERISA action. 29 U.S.C. § 1132(g)(1). Having determined that summary judgment is appropriate on Plaintiff's remaining claims against the ReliaStar Defendants, the Court finds that an award of Plaintiff's attorneys' fees and costs is not warranted here. Accordingly, the ReliaStar Defendants' motion for summary judgment on this claim is GRANTED.

### E. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on her claims against the Coca–Cola and ReliaStar Defendants for wrongful denial of benefits under Section 1132(a)(1)(B). The parties' respective arguments in support of and opposition to Plaintiff's motion for summary judgment are substantially the same as those made in support of and in opposition to the Coca–Cola and ReliaStar Defendants' motions for summary judgment. (*Compare* Pl.'s Reply Br. in Supp. of Mot. for Summ. J. Against Coca–Cola Defs. at 4–15 *and* Pl.'s Reply Br. in Supp. of Mot. for Summ. J. Against ReliaStar Defs. at 2–8 *with* Pl.'s Resp. in Opp'n to Coca–Cola Defs.' Mot. for Summ. J. at 5–19 *and* Pl.'s Resp. in Opp'n to ReliaStar Defs.' Mot. for Summ. J. at 3–9.) Plaintiff's motion must be denied for the same reasons which warrant the entry of summary judgment in favor of the Coca–Cola and ReliaStar Defendants on her claim for wrongful denial of benefits— namely, that the Coca–Cola Defendants' denial of Plaintiff's request for benefits was not *de-novo* wrong or unreasonable under an arbitrary and capricious standard of review, and that the ReliaStar Defendants cannot be held liable for wrongful denial of benefits under Section 1132(a)(1)(B). *See* Section II(C)(1), (D)(1), *supra.* Accordingly, Plaintiff's Motion for Summary Judgment is DENIED.

## III. CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion and Memorandum of Law for Leave to Supplement Her Summary Judgment Pleadings [64] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Coca–Cola Defendants' Motion for Summary Judgment [42] is **GRANTED IN PART** and **DENIED IN PART.** The Coca–Cola Defendants' motion is **GRANTED** with respect to Plaintiff's claims for wrongful denial of benefits under Section 1132(a)(1)(B), for failure to provide Plan documents under Section 1132(c), and for attorneys' fees and costs under Section 1132(g). The Coca–Cola Defendants' motion is **DENIED AS MOOT** with respect to Plaintiff's claim for interference with Plan benefits under Section 1140 and this claim is **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that the ReliaStar Defendants' Motion for Summary Judgment [39] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [37] is **DENIED.**

**SO ORDERED,** this 30th day of September, 2005.